Emmanuel MELISSINOS,
M.D., Appellant,

v.

Thongkhan PHAMANIVONG, Appellee.

No. 6–91–054–CV.

Court of Appeals of Texas,
Texarkana.

Dec. 17, 1991.

Rehearing Overruled Jan. 14, 1992.

John D. Ellis, Jr., John D. Ellis & Associates, Houston, Steve Selby, Scott, Douglass & Luton, Austin, for appellant.

Carl Crow, Kevin Dubose, Perdue & Todesco, Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Emmanuel Melissinos appeals the trial court's judgment awarding damages to Thongkhan Phamanivong for injuries arising out of medical treatment performed by Melissinos. Melissinos claims that the trial court erred in the manner in which it submitted jury questions concerning failure to obtain informed consent to the surgical procedures performed and for fraud in failing to obtain that consent. He also claims that the evidence is legally and factually insufficient to support the jury findings concerning the questions on informed consent and loss of earnings. Phamanivong replies to the points of error brought by Melissinos, but first presents a threshold question whether Melissinos waived his right to attack the jury's findings by asking the trial court to enter a judgment on the verdict. We determine that Melissinos did not waive his right to challenge the jury's findings and that the trial court did not err in rendering judgment based upon fraudulent failure to obtain consent. However, we hold that the jury finding on loss

of earning capacity is not supported by legally sufficient evidence. Therefore, we modify the judgment to delete the recovery for loss of earning capacity, and, as modified, we affirm the trial court's judgment.

Phamanivong, a Laotian refugee who speaks no English, severed his thumb, index finger, and part of the middle finger from his right hand in a work-related accident on July 21, 1981. When he was taken to the hospital, the staff assigned Melissinos as the physician to treat him. The immediate treatment consisted of cleaning the crushed hand, removing tissue, and surgically placing the severed thumb bone in Phamanivong's groin, storing it for possible later use. Hospital records indicate that the physicians had determined to perform a surgical treatment called the "Morrison procedure." This procedure involves removing skin tissue, arteries, and bone from the big toe and attempting to use this material to reconstruct the thumb. On July 30, through the use of an interpreter, several doctors attempted to obtain Phamanivong's consent for the Morrison procedure. After this procedure was thoroughly explained to him, Phamanivong refused to give his consent.

About a week later, Melissinos and others again attempted to obtain Phamanivong's consent for the Morrison procedure. The hospital called Sang Seunsom, formerly the director of education in Laos who works for the International Rescue Committee in Houston and who had served as an interpreter in court proceedings, to act as an interpreter. Although the extent, content, and even the date of Melissinos' conference with Phamanivong concerning the consent to the procedure were disputed, the jury believed Phamanivong's version, which was corroborated by Seunsom. Phamanivong described a brief conference in which Melissinos described an incision, drainage and skin graft, which would result in a normal-looking thumb and big toe. Melissinos failed to advise of any risks and also advised Phamanivong that if he wanted a job in the future, he would need the surgery and that he had to decide immediately.

Seunsom apparently was a particularly effective witness. The physicians who testified essentially stated that if Melissinos relayed to Phamanivong the information as Seunsom testified to it, it would be so misleading as to amount to a misrepresentation. Two physicians, Edward Withers and Stephen Ramey, testified that, even when successful, the Morrison procedure does not result in a normal-appearing thumb or toe and that this should be related to a patient before seeking that patient's consent.

Phamanivong ultimately consented to a procedure described as an incision, drainage, and skin graft. Melissinos performed the Morrison procedure on August 10, 1981. When Phamanivong regained consciousness after surgery and learned that part of his toe had been placed on his thumb, he was severely distressed. Later, he entertained suicide as a result.

An infection developed in the part of the toe that had been placed on the thumb and part of the bone in the reconstructed thumb was lost. When discharged from the hospital on September 14, 1981, Phamanivong had an open thumb wound. He was readmitted to the hospital October 11, 1981, and stayed in the hospital for two additional skin graft surgeries, until his discharge on December 2, 1981.

A rehabilitation specialist, who met Phamanivong in February 1982, found him to be upset and depressed. She described his hand and foot as grotesquely deformed. Photographs, viewed by the jury, depicted the appearance of the hand and foot. Additionally, the jury personally viewed the hand and foot at the time of trial.

At the time of his accident, Phamanivong was earning $4.00 per hour. After the surgery, he was unable to work for most of six years. At the time of trial, he had obtained employment and was performing janitorial work. The bottom tissue pad was missing from his right big toe and, although when he walked he held his injured toe off of the ground, he was unable to walk without pain. The appearance of his hand and foot caused Phamanivong to be embarrassed and he attempted to keep

them covered. With this factual background, we turn to the legal issues presented.

## WAIVER OF RIGHT TO CHALLENGE FINDINGS

■ It is initially appropriate to address Phamanivong's point that Melissinos has waived the right to challenge the jury's findings. If this is a valid point, other issues become moot. Phamanivong's point is grounded upon post-verdict acts by Melissinos' attorney. After verdict, Phamanivong's attorney filed a motion for judgment on the verdict. Melissinos' attorney responded to this motion, attacking essentially the claim for prejudgment interest. The prayer for relief in the response to the motion for judgment is critical to our decision. In that prayer, Melissinos' attorney asks that the motion for judgment be denied and alternatively asks for entry of a judgment for an amount less than that sought.[1] Ordinarily, when a party moves for judgment based upon the jury verdict, the party is considered to have waived any attack on the factual sufficiency of the jury's findings on appeal. *Litton Indus. Prod., Inc. v. Gammage*, 668 S.W.2d 319, 321 (Tex.1984). In the *Litton* case, Litton filed a motion for judgment for the amount of actual damages only. The trial court denied this motion and trebled the damages. On appeal, Litton was not allowed to take a position inconsistent with that part of the judgment that complied with his proposed judgment. On the other hand, a movant may reserve the right to complain if the facts show it necessary and an express reservation is made. *First Nat'l Bank of Beeville v. Fojtik*, 775 S.W.2d 632,

633 (Tex.1989). In *First Nat'l Bank of Beeville*, the party expressly reserved the right to complain on appeal. It has been held that there is no inconsistency between a motion for judgment based on one interpretation and a challenge to the weight of the evidence based on the adverse interpretation. *Miner–Dederick Constr. Corp. v. Mid–County Rental Serv.*, 603 S.W.2d 193, 198 (Tex.1980).

■ Our decision then is whether the *Gammage* rule of waiver or the *Fojtik* rule of no waiver of the right to complain of the fact findings should apply under the present circumstances. Based upon Melissinos' initial request that Phamanivong's motion for judgment be denied, coupled with the alternative request for entry of judgment in an amount less than that requested, we conclude that the post-verdict acts of the attorney for Melissinos did not operate to waive the right to challenge the factual findings on appeal. We conclude this based upon the words used by Melissinos in response to Phamanivong's motion for judgment, the other post-verdict actions—including a motion for new trial—of the attorney for Melissinos. Also, our conclusion is based upon a sense that procedural rules are, after all, designed to be construed to facilitate a just determination of the merits of a legal controversy.[2] Procedural rules are not designed to elevate form over substance. Having determined that Melissinos has not waived his right to challenge the jury's findings, we now turn to the issues he presents on appeal.

## SUBMISSION OF JURY QUESTIONS

■ Melissinos claims that the trial court erred in several respects concerning

---

1. The prayer for relief is as follows:
 WHEREFORE, PREMISES CONSIDERED, Defendant, Emmanuel Melissinos, M.D., prays that his (sic) Honorable Court deny Plaintiff's Motion for Judgment; deny Plaintiff's request for an award of taxable costs in the amount of the interpreting fee paid by the Plaintiff; in the alternative, enter judgment in favor of the Plaintiff in the amount of Six Hundred Ninety Three Thousand One Hundred Forty Seven and 56/100 Dollars ($693,147.56); and for such other and further relief to which Defendant may be justly entitled.

2. Tex.R.Civ.P. 1 emphasizes this overall design. It provides that:
 The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction.

the submission of jury questions. He complains that the court erred in refusing a jury question which he requested and in submitting another question concerning informed consent. The trial court refused to submit a jury question requested by Melissinos which dealt with informed consent.[3] Melissinos contends that the submission of this question is required by the Texas Pattern Jury Charges under both common law and the Medical Liability and Insurance Improvement Act. TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Supp.1991). Although the Texas Pattern Jury Charges is not mandatory on trial courts, the suggested charges are persuasive. The suggested questions for a common law cause of action for failure to obtain informed consent ask whether the doctor failed to obtain informed consent, define informed consent, ask whether a person of ordinary prudence would have refused the treatment if the risks had been disclosed and, lastly, ask whether the failure was a proximate cause of injury.[4] This pattern jury charge submits the doctrine of informed consent under the common law. The first comment under 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 51.11 (2nd ed. 1990) is that the charge should be used only in cases arising from events earlier than August 29, 1977.[5] And the caveat is that the charge should apply only in rare instances. PJC 51.11, p. 51–22. We conclude that the court did not err in failing to charge on the doctrine of informed consent under the common law as requested by Melissinos' attorney.

■ We now consider whether the court erred in failing to submit the doctrine of informed consent as requested by Melissinos' attorney under the Medical Liability and Insurance Improvement Act. Again, Melissinos' complaint is that for a cause for a failure to obtain informed consent, there must be a question on the decisional element of the cause. Melissinos relies on the case of *McKinley v. Stripling*, 763 S.W.2d 407 (Tex.1989), for the proposition that in a case such as this, the proper inquiry must be whether a reasonable person would have refused the treatment or procedure had he been fully informed. Melissinos' reliance on this decision is misplaced. In *McKinley*, the court had before it a charge in which four issues concerning consent were submitted to the jury; but, over objection, no issue was submitted concerning proximate cause. *Id.* at 408–09. The court noted that before the Medical Liability and Insurance Improvement Act became law, a jury question on proximate cause had to be submitted. The primary holding on this issue was that nothing in the statute eliminated the need to submit an issue on proximate cause and that otherwise a strict liability without causation would result. *Id.* at 409.

The trial court submitted this case to the jury on broad-form questions asking whether Melissinos failed to obtain consent, whether in so doing he committed fraud, and whether those acts were a proximate cause of injury to Phamanivong. In connection with those questions, the trial court submitted a definition of informed consent.[6] We find no great distinction between the language in *McKinley*, which requires that a reasonable person—as opposed to the plaintiff—would have refused the treatment, and the language used in

---

**3.** "Do you find from a preponderance of the evidence that if those risks had been so disclosed, that a reasonable person of ordinary prudence would have refused such surgery under the same or similar circumstances?" This is said to submit the decisional element of an informed consent charge. That is, what would a reasonably prudent person have decided had he been fully informed.

**4.** 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 51.11 (2nd ed. 1990) gives the following definition: " "Informed consent" means consent given by a patient to whom such risks incident to *treatment by radiation therapy* have been

disclosed as would be disclosed to the patient by a *physician* of ordinary prudence under the same or similar circumstances."

**5.** This is the effective date of the Medical Liability and Insurance Improvement Act of Texas, TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Supp. 1991).

**6.** The court instructed that: " "Informed Consent" means consent given by a patient who has been informed by a physician of the risks and hazards incident to the Morrison Procedure which could influence a reasonable person in making a decision to consent to the procedure."

the definition, which requires that the patient would be influenced in making the decision for the treatment. The definition, along with the questions submitted to the jury, sufficiently submitted this case based upon a lack of informed consent.

■ We also find no trial court error in submitting both the informed consent and fraud causes of action. TEX.REV.CIV.STAT. ANN. art. 4590i, the Medical Liability and Insurance Improvement Act, states:

> In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.02. Although the informed consent cause of action must be brought under the Medical Liability and Insurance Improvement Act, a fraud cause of action does not need to. Here, more than mere misrepresentations were made by Melissinos in the procuring of consent. The misrepresentations by Melissinos included statements that the toe and thumb would be normal. In *Gaut v. Quast*, there was no separate basis of recovery for informed consent and fraud under the common law. *Gaut v. Quast*, 505 S.W.2d 367 (Tex.Civ.App.–Houston [14th Dist.]), *writ ref'd n.r.e. per curiam*, 510 S.W.2d 90 (Tex.1974). However, since the definition of informed consent does not include misrepresentations, now, under the Act, the common law fraud cause of action was correctly submitted.

■ In complaining about the manner of submission of the case to the jury, Melissinos faces the obstacle that the trial court is generally allowed broad discretion in submitting the charge to the jury in the trial of a case. *See* Part II, Section 11, D, entitled CHARGE TO THE JURY, TEX.

R.CIV.P. 271–279. In submitting cases to the jury upon broad-form questions, the trial court exercises broad discretion. *Texas Dep't of Human Serv. v. E.B.*, 802 S.W.2d 647 (Tex.1990); TEX.R.CIV.P. 277. Abuse of discretion occurs only when the trial court acts without reference to any guiding principle. *Texas Dep't of Human Serv. v. E.B.*, 802 S.W.2d at 649. Likewise, in the submission of jury instructions and definitions, the trial court exercises broad discretion. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245 (Tex.1974); *Louisiana & Arkansas Ry. Co. v. Capps*, 766 S.W.2d 291 (Tex.App.–Texarkana 1989, writ denied); TEX.R.CIV.P. 278. Medical malpractice cases based upon a failure to obtain the informed consent of a patient, while perhaps unique, are subject to the same procedural rules as all other cases. Here, the trial court broadly submitted jury questions concerning a failure to obtain informed consent and proximate cause and gave the jury a proper definition of informed consent. The court's acts were not without reference to any guiding principles. Melissinos shows no trial court error or abuse of its broad discretion in the manner in which the trial court submitted this case to the jury.

### EVIDENTIARY ISSUES

Melissinos also maintains that there is no evidence or insufficient evidence to support the jury's findings on the decisional element of informed consent, the finding of fraud in failing to obtain informed consent, the finding of lost earnings in the past, and the finding of loss of earning capacity.

■ In reviewing a no evidence point of error, only the evidence which supports the jury's verdict may be considered; all contrary evidence must be disregarded. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *International Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex. 1987). When a factual sufficiency challenge is reviewed, all of the evidence is considered, including evidence contrary to the verdict. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Burnett v. Motyka*, 610 S.W.2d 735, 736

(Tex.1980). When we review a jury's finding or its failure to find, we may not merely substitute its judgment for that of a jury. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988).

 The jury found that Melissinos committed fraud in failing to obtain informed consent. Persuasive evidence that Phamanivong would not choose to have the Morrison procedure performed if he had been fully informed is Phamanivong's initial refusal to consent to the procedure when it was fully explained to him. Concerning the subsequent effort to obtain Phamanivong's consent, the interpreter who was used as a conduit between Melissinos and Phamanivong testified that Melissinos never informed Phamanivong that the operation would involve the removal of nerves, blood vessels, tissue and bone from the big toe. Further, Phamanivong himself testified that he was told his toe and thumb would be normal after the operation. There was also testimony from medical doctors that the failure to inform the patient that this removal would occur would be a misrepresentation. When the jury is presented with conflicting evidence, it may choose to believe one witness and disbelieve others, or it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 699 (Tex.1986). Here, the jury believed the testimony on behalf of Phamanivong and disbelieved testimony by Melissinos that the operation was fully explained to Phamanivong. There is evidence to support the jury's finding of fraud and on the decisional element. Further, when looking at all of the evidence, both in support of and contrary to the verdict, the evidence is sufficient.

 The jury also found that Phamanivong had a loss of earnings in the past as a result of this operation. There is some evidence to support the jury's finding. Testimony adduced at trial revealed that Phamanivong could not wear the shoes required to get his old job back after the operation. There was also testimony that he may have been able to get his job back if the operation had not occurred. Here, the jury found lost wages and not diminished earning capacity. The testimony revealed that Phamanivong was employed for a number of months before the accident and that he was receiving $4.00 an hour. There is enough evidence for this finding to be factually sufficient.

 The final jury finding which Melissinos contends is legally and factually insufficient is the jury finding of loss of earning capacity. This is a loss of future earning capacity as distinguished from loss of past earnings. The determination of loss of future earning capacity, like that of future medical expenses, is up to the jury's discretion; however, the evidence must provide some degree of certainty of future damages. *Harvey v. Culpepper*, 801 S.W.2d 596, 600 (Tex.App.–Corpus Christi 1990, no writ). There was no testimony at trial which revealed what Phamanivong would be making if the surgery had not occurred. There was no evidence adduced at trial which could show that Phamanivong had suffered a loss of earning capacity due to the surgery. There was no evidence as to what his earning capacity would be if there had been no surgery. Therefore, we conclude that there is no evidence to support the jury finding on loss of future earning capacity.

The judgment of the trial court is, therefore, modified to delete recovery for the $62,500.00 loss of earning capacity as fixed by the court and, as modified, is affirmed.