**Revised July 27, 2001**

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 00-20380**

_____

**NORTHWINDS ABATEMENT, INC.**

**Plaintiff-Appellee,**

**versus**

**EMPLOYERS INSURANCE OF WAUSAU,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Southern District of Texas**
_____

July 11, 2001

Before KING, Chief Judge, REAVLEY and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In the second appearance of this case before us on appeal, Employers Insurance of Wausau ("Wausau") appeals a jury verdict in favor of Northwinds Abatement, Inc. ("Northwinds") and the resulting judgment of nearly $1.1 million, including actual and treble damages, attorney's fees, interest and costs. Wausau asserts that, as a servicing company, it was an agent of the Texas Workers' Compensation Insurance Facility (the "Facility") and therefore exempt from liability claims pursuant to now-superseded

Article 5.76-2, § 2.12 of the Texas Insurance Code. We disagree, and affirm the district court's holding that Wausau is not an agent of the Facility. Wausau also argues that the claims underlying the jury verdict are all invalid as a matter of law. Wausau is in part correct, but under Texas law both the Texas Deceptive Trade Practices Act ("DTPA") and Insurance Code claims are viable, and we must affirm the judgment on these extra-contractual claims. Finally, although the award of statutory attorneys' fees to Northwinds is high, it is not reversible. The judgment is AFFIRMED.

## BACKGROUND

Northwinds is a corporation engaged in the hazardous business of asbestos abatement, remediation and removal work. Unable to obtain workers' compensation insurance on the open market, it applied for and received coverage through the Texas Workers Compensation Insurance Facility, a private, nonprofit, unincorporated association of insurers created by statute with the purpose, inter alia, of providing coverage for employers who are unable to obtain insurance in the voluntary insurance market.[1] The

---

[1] The Texas statutes establishing an insurer of last resort for workers compensation insurance have been the subject of frequent revision and redrafting. The Facility was formerly known as the Texas Workers' Compensation Assigned Risk Pool, with the Facility replacing the Risk Pool on January 1, 1991. See Tex. Ins. Code Ann. art. 5.76-2 (Vernon 1991)(amended 1993 and repealed 1997, now Tex. Ins. Code Ann. art. 21.28-C (Vernon 2000)). On January 1, 1994, the Texas Workers' Compensation Insurance Fund replaced the Facility as the insurer of last resort. See id. (1993 revision). While the Fund retained its name, the statutes governing

Facility designated Wausau as the primary "servicing company" for Northwinds and Wausau subsequently issued Northwinds a workers' compensation policy.[2]

In 1993 Northwinds filed suit against Wausau for alleged mishandling of workers' compensation claims filed by four Northwinds employees. Northwinds alleged that Wausau paid these four claims without properly investigating them, thereby causing increased insurance premiums for Northwinds and a loss of business due to the customer perception that Northwinds was a safety risk. Northwinds characterized its claims as raising fraudulent and bad faith settlement practices, breach of contract, negligence, violations of the Texas DTPA and violations of the Texas Insurance Code.

---

again changed in 1997. See Tex. Ins. Code Ann. art. 5.76-3 and art. 21.28-C §§ 26, 27. (Vernon 2000).

[2] The servicing company contracts with the Facility to issue policies evidencing the insurance coverage provided and to service the risk. While the servicing company is the issuer of the policy, the Facility itself is the insurer. The members of the Facility collectively reinsure each policy it issues, dividing reinsurance liability in proportion to premiums received by each member.

Notwithstanding its limited liability, the servicing company still performs many of the traditional functions of an insurer. The servicing company issues the policy; investigates, reports, and pays claims; inspects and classifies risks; and provides legal support as required by the policy. See Tex. Ins. Code Ann. art. 5.76-2.

The operational mechanics of the Facility are discussed at length in the earlier appeal of this case. See Northwinds Abatement, Inc. v. Employers Insurance of Wausau, 69 F.3d 1304, 1305-06 (5th Cir. 1996)(Northwinds I).

Northwinds' suit was removed to federal court, where Wausau filed a motion to dismiss for lack of subject matter jurisdiction, citing Northwinds' failure to exhaust its administrative remedies through the Facility and the Texas Department of Insurance. The district court denied this motion. Wausau then moved for summary judgment, contending that it was not liable to Northwinds because it was only a servicing company for the Facility and not Northwinds' insurer. When the district court granted this motion, Northwinds appealed. On appeal, Wausau renewed its challenge to the district court's jurisdiction.

This court determined that, pursuant to the doctrine of primary jurisdiction, the district court had jurisdiction because the remedies sought by Northwinds could not be provided administratively. See Northwinds Abatement, Inc. v. Employers Insurance of Wausau, 69 F.3d 1304 (5th Cir. 1995) (Northwinds I). However, this court also determined that the district court should abstain from resolving Northwinds' claims until certain factual determinations were made in the administrative proceedings. Rejecting Northwinds' claim for breach of the duty of good faith and fair dealing, the court nevertheless reversed the summary judgment as to all other claims. See Northwinds I, 69 F.3d at 1311-12.

In September 1998, the district court held that Northwinds had exhausted all avenues of administrative review, and the case approached trial. Wausau filed a last-minute motion for

4

summary judgment, asserting that it was an agent of the Facility and, as such, protected from liability under Article 5.76-2, § 2.12 of the Texas Insurance Code. After supplemental briefing on the issue, the district court denied the motion, and the case went to trial.

The jury returned a verdict in favor of Northwinds on all claims except that for breach of contract. The jury awarded actual damages of $19,234.95 for the increased premiums Northwinds was forced to pay, $55,335.49 for attorneys' fees incurred in defending the lawsuit initiated against it by the Facility at Wausau's urging, and $712,000 in attorneys' fees incurred in the federal suit against Wausau. The district court entered a judgment awarding Northwinds $74,570 in actual damages, $223,711.32 in treble damages, $712,000 in attorneys' fees, prejudgment interest on the actual damages, post-judgment interest, and costs. Wausau now appeals.

**WAUSAU AS AN "AGENT" OF THE FACILITY**

Wausau first argues that as a servicing company, it is an agent of the Facility and thereby immune from liability under Article 5.76-2, § 2.12 of the Texas Insurance Code. Article 5.76-2, § 2.12 states in relevant part that:

> "There shall be no liability on the part of and no cause of action shall arise against the governing committee, the facility, its executive director, or any of its staff, agents, servants, or employees arising out of or in connection with any judgment or decision made in connection with the performance of the powers and duties

5

under this article or for recommendation or decision concerning any inspections or safety engineering investigations performed or for any recommendation or decision made in good faith". (Emphasis added).

According to Wausau, this court has already deemed it an agent of the Facility, based on the conclusion in Northwinds I that "an agent [Wausau] may be liable for its own acts of negligence or fraud". 69 F.3d at 1311. Wausau takes this as a judicial determination that it is an agent of the Facility. Further, Wausau argues that this court's invocation in Northwinds I of Maintenance, Inc. v. ITT Hartford Group, Inc., 895 S.W.2d 816 (Tex.App.-- Texarkana 1995) ("Maintenance III"), demonstrates that Wausau has already been determined to be the agent of the Facility.

We disagree that Wausau's agency status under § 2.12 was determined in Northwinds I. That opinion explicitly refused to consider whether Wausau was an agent of the Facility for § 2.12 purposes. See Northwinds I, 69 F.3d at 1308, n.3. Additionally, the citation in Northwinds I to Maintenance III represented not a wholesale adoption of the Texas intermediate court of appeals' opinion, but an acknowledgment that the Maintenance III decision had been withdrawn and substantially modified. See id. at 1311. Thus, the law of the case does not govern Wausau's status as an agent under § 2.12.

Whether a "servicing company" is an "agent" of the Facility is a novel question of Texas law. Article 5.76-2 of the Texas Insurance Code does not define an "agent." It defines a

6

"servicing company" as "a member of the facility or other eligible entity that is designated by the board to issue a policy that evidences the insurance coverages provided by the fund to a rejected risk and to service the risk as provided by this article." Tex. Ins. Code Ann. art. 5.76-2, § 1.01(12). A "member," in turn, is defined as "an insurer that is a member of the facility." Id. at § 1.01(15). We have found no evidence that the Texas Legislature intended to protect servicing companies from liability in § 2.12, and the Texas Supreme Court has never considered this issue.[3] Texas intermediate court decisions contain offhand references to servicing companies as agents of the Facility, but they are not definitive.[4]

---

[3] It is worth noting that other, more recent, Texas statutes explicitly grant immunity to member insurers. For example, in the context of the Texas Property and Casualty Insurance Guaranty Association "[t]here is no liability on the part of, and no cause of action of any nature arises against any member insurer [of the Association] . . . for any good faith action or failure to act in the performance of powers and duties under this Act." See Tex. Ins. Code Ann. art. 21.28-C, § 16(a) (Vernon 2000). This indicates that had the Texas Legislature sought to grant similar immunity to members of the Facility in art. 5.76-2, it would have so stated.

[4] A few Texas courts of appeals have, with little discussion or analysis, labeled servicing companies as the agents of the Facility for the limited purpose of issuing a policy. See, Maintenance, Inc. v. ITT Hartford Group, 895 S.W.2d 816, 818 (Tex. Ct. App.--Texarkana 1995, writ denied) (Maintenance III)(holding that the servicing company is an "agent to issue a policy for the pool."); Tex. Workers Comp. Ins. Facility v. Peakload, Inc., 1998 WL 798640, at *1 (Tex. Ct. App. - Austin, 1998) (unpub.) ("The servicing company is simply an agent that issues a policy for the pool."). However, these cases do not discuss subsequent transactions, such as claims handling.

The structure of the Insurance Code offers the only direct interpretive information, and it suggests that § 2.12 does not apply to servicing companies. Article 5.76-2 of the Texas Insurance Code is divided into five parts. Part 2, in which § 2.12 is found, does not discuss or even mention servicing companies. Part 4, in turn, sets out the rules governing servicing companies but contains no exemption from liability comparable to § 2.12. Under the doctrine of ejusdem generis, the term "agent" in § 2.12 should be restricted to the class of persons enumerated in Part 2. See Dawkins v. Meyer, 825 S.W.2d 444, 447 (Tex. 1992)(outlining the doctrine of ejusdem generis and explaining that "where specific and particular enumerations of persons or things are followed by general words . . . , the general words are not to be construed in their widest meaning or extent, but are treated as limited and applying only to persons or things of the same kind or class as those expressly mentioned."). Viewed thus in context, "agent" must be a term related to the Facility, its governing body and employees, and not to the members or to servicing companies. Wausau's attempt to shelter itself under the wing of Part 2 of the Insurance Code thus seems ill-conceived.

Moreover, the ordinary meaning of the term "agent" also fails to express Wausau's relationship with the Facility. In Texas, "[a]gency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is

authorized to act for the principal, subject to the principal's control." Karl Rove & Co. v. Thornburgh, 39 F.3d 1273, 1295-96 (5th Cir. 1994). The essential element in determining agency relationship is the principal's right to control the agent: "To prove an agency relation under Texas law, there must be evidence from which the court could conclude that '[t]he alleged principal [had] the right to control both the means and the details of the process by which the alleged agent [was] to accomplish the task.'" Id. (quoting In re Carolin Paxson Adver., Inc., 938 F.2d 595, 598 (5th Cir. 1991)). "The right to control the details of a person's work determines whether an employment or independent contractor relationship exists." Weidner v. Sanchez, 14 S.W.3d 353 (Tex. Ct. App.-- Houston [14th Dist.] 2000, writ denied). The portion of the Texas Insurance Code detailing the relationship between the Facility and the servicing companies leaves substantial discretion to the servicing company to determine the means for accomplishing its tasks. See Tex. Ins. Code Ann. Art. 5.76-2, § 4.08. The Facility's lack of control over how the servicing company accomplishes its designated tasks indicates that the servicing company is not an agent of the Facility.

This conclusion is also supported by the contract between the Facility and Wausau, which states that Wausau is an independent contractor, and that the company retains the right to control the means, manner, and details of fulfilling its obligations under the agreement. Under Texas law, "[a] written contract that expressly

9

provides for an independent contractor relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating that the contract was subterfuge, that the hiring party exercised control in a manner inconsistent with the contract provisions, or if the written contract has been modified by a subsequent agreement, either express or implied." Weidner, 14 S.W.3d at 353. There is nothing in the record to indicate that the Facility exercised a greater level of control over Wausau's work than that specified in the contract. For all these reasons, Wausau is not an agent of the Facility, it cannot take refuge behind § 2.12, and Northwinds' claims are not barred.

## NORTHWINDS' FRAUD, NEGLIGENCE AND STATUTORY CLAIMS

Five theories of liability were submitted to the jury in this case: statutory claims under the DTPA and Insurance Code, and common law theories of breach of contract, fraud and negligence. The jury found in Northwinds' favor on all but the breach of contract claim. Wausau now challenges both the legal basis for these claims and the sufficiency of the evidence supporting each of them. We review questions of law de novo, while the sufficiency of the evidence is reviewed by examining all the evidence in the light most favorable to the verdict.[5] See Hollowell v. Orleans Reg'l

---

[5] Northwinds contends that Wausau did not properly preserve error and that, as such, the fraud, negligence and statutory claims should be reviewed only for plain error. We disagree. Wausau adequately preserved error on these claims via its motion for directed verdict, objection to the submission of certain jury questions, opposition to Northwinds' motion for judgment, and the

<u>Hosp. LLC</u>, 217 F.3d 379, 385 (5th Cir. 2000)(de novo standard for questions of law); <u>United States v. Guerrero</u>, 234 F.3d 259, 261-62 (5th Cir. 2000) (stating the standard of review for sufficiency of the evidence).

<b>COMMON LAW CLAIMS</b>

Wausau argues that Texas law does not recognize causes of action for negligent claims handling or fraud in regard to the subject matter of the contract and that the jury's findings on those issues must be overturned.[6]   This is correct.   In <u>Higginbotham v. State Farm Mut. Auto Ins. Co.</u>, 103 F.3d 456, 460 (5th Cir. 1997), this court recognized the absence of a cause of action for negligent claims handling under Texas law.[7]  Negligent

---

post-trial renewal of its motion for a directed verdict.

[6]     Northwinds elected to recover judgment under the Texas Insurance Code claim, but Wausau, to prevail on appeal, would have to overturn the common law claims as well.

[7]     Interpreting Texas law, a federal district court has clearly analyzed this issue:

> A tort claim has been found to arise out of the breach of an insurance carrier's contractual duty in only two instances: (1) when the insurer breaches its duty of good faith and fair dealing or (2) when the insurer fails to exercise ordinary care and prudence in considering an offer of settlement within the policy limits.  All other claims, like that asserted for negligent claims handling, have no legally independent basis and, therefore, are regarded merely as actions for breach of contract.

> <u>French v. State Farm Ins. Co.</u>, 156 F.R.D. 159, 162 (S.D. Tex. 1994).

11

claims handling is subsumed into breach of contract except under very limited circumstances. In examining whether an action sounds in contract or tort, the Texas Supreme Court has declared that "[i]f the defendant's *conduct* . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may *also* sound in tort." Southwestern Bell Tel. Co. v. Delanney, 809 S.W.2d 493, 494 (Tex. 1991) (emphasis added). Similarly, for an action to sound in fraud instead of breach of contract, Wausau's fraudulent conduct must give rise to liability independent of the contract. Id. The Texas Supreme Court held there that "[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." Id. The essence of Northwinds' common law claims lay in Wausau's false statement that it was fully investigating the disputed workers compensation claims and in the resulting damages from increased premium payments when Northwinds was rendered unable to contest the claims. No liability independent of the contractual duty to handle claims exists as a result of this false statement. Neither of the common law claims can be sustained under Texas law.

### STATUTORY CLAIMS

Certain statutory causes of action exist in Texas under the DTPA and the Insurance Code, however, regardless whether the plaintiff also has a viable breach of contract claim. See First

12

Title of Waco v. Garrett, 860 S.W.2d 74, 76-77 (Tex. 1993); Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 270-71 (Tex. 1992); Vail v. Texas Farm Bureau Mut. Ins. Co., 754 S.W.2d 129, 136 (Tex. 1988).[8] Further, a servicing company of the Facility can be liable in its individual capacity for violations of the DTPA and the Insurance Code. See Maintenance III, 895 S.W.2d at 819. Where, as here, there has been no breach of contract or violation of the duty of good faith and fair dealing, the bar for establishing extra-contractual liability is high: the insurer must "commit some act, so extreme, that [it] would cause injury independent of the policy claim." Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995).

Wausau's successful efforts to persuade the Facility to sue Northwinds baselessly involved acts that a reasonable jury could find extreme, and they clearly caused Northwinds extra-contractual damages, as the company had to spend over $55,000 defending itself against the lawsuit. Examined under the deferential standard of appellate review, the evidence supports the finding of an extreme extra-contractual act sufficient to satisfy the Stoker standard.

---

[8] An Insurance Code claim based on breach of the duty of good faith and fair dealing will generally fail in the absence of a viable breach of contract claim. Northwinds' claims did not depend on good faith and fair dealing alone but also on misrepresentation.

13

**ATTORNEYS' FEES**

Wausau challenges the jury's award of $712,000 in attorneys' fees to Northwinds as both insufficiently supported by the evidence and excessive. In diversity cases such as this one, attorneys' fee awards are governed by state law. Mid-Continent Casualty Co. v. Chevron Pipe Line Co., 205 F.3d 222, 230 (5th Cir. 2000).

The Texas Insurance Code provides for a non-discretionary award of attorneys' fees to prevailing parties. See Tex. Ins. Code art. 21.21 § 16. A plaintiff is entitled to attorney's fees that are "reasonable and necessary" for the prosecution of the suit. See Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1992). The party seeking to recover attorneys' fees bears the burden of proof on the issue. However, where the party seeking attorneys' fees offers reasonable and credible testimony concerning the fees, and the party opposing the attorneys' fees has the opportunity to contradict or disprove the testimony and fails to do so, the testimony of the witness may be taken as true as a matter of law. See Ragsdale v. Progressive Voters' League, 801 S.W.2d 880, 882 (Tex. 1990) ("In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted by any other witness or attendant circumstances and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to

14

cast suspicion thereon."); see also Brown v. Bank of Galveston, 963 S.W.2d 511, 515 (Tex. 1998).

The jury's verdict was within the range of evidence presented. The only evidence concerning attorneys' fees was the testimony of John McEldowney, a veteran Texas attorney. McEldowney properly laid out the factors identified by the Texas Supreme Court for consideration in determining an award of attorneys' fees.[9] Wausau presented no evidence controverting McEldowney's testimony, and Wausau hardly cross-examined him.

Wausau contends, nevertheless, that because the contract between Northwinds and its attorneys established only a contingency fee, there is insufficient evidence to support the jury's award of

---

[9] In Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812, 818 (Tex. 1997), the Texas Supreme Court identified eight factors to be considered in evaluating the reasonableness of attorneys' fees: "(1) the time and labor required, the novelty and difficulty of the question involved, and the skill required to perform the legal service properly; (2)the likelihood . . . that the acceptance of particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the result obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." McEldowney identified and discussed each of these factors in relation to this case. These factors are virtually identical to those examined by federal courts in awarding attorneys' fees. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

15

fixed-rate (hourly billed) attorneys' fees to Northwinds.[10]  We disagree.  In situations where counsel and client have entered into a contingency fee arrangement, Texas law requires the finder of fact to calculate a statutorily-founded award of reasonable and necessary attorneys' fees as a dollar amount rather than as a percentage of the overall recovery.  See Arthur Andersen, 945 S.W.2d at 819 (interpreting fee-shifting provision of Texas DTPA).  There is no reason why the Insurance Code's fee-shifting provision should be treated differently.  This point is meritless.

Wausau also contends that, regardless of the sufficiency of the evidence, the award of $712,000 in attorneys' fees was excessive.  This court reviews whether the district court abused its discretion in refusing to reduce an excessive award of attorneys' fees.  See Mid-Continent, 205 F.3d at 232; Romaguera v. Gegenheimer, 162 F.3d 893, 896 (5th Cir. 1998).

In deciding whether a fee is excessive, an appellate court is "entitled to look at the entire record and to view the

---

[10]    Indeed, it is odd that Wausau now objects to the jury's adoption of an hours-billed based fee, when in its cross examination of McEldowney Wausau seemingly attempted to persuade the jury to adopt a fixed-fee award.  Wausau's attorney appeared to attack the contingent fee model, inquiring of Mr. McEldowney "[d]on't you think that a better way for determining whether a person should unwillingly be forced to pay a fee would be to look at the actual value of the actual work done, rather than some voluntary agreement that the law firm suing had with their client?" Mr. McEldowney responded negatively, but the jury obviously agreed with Wausau's counsel, opting for an "actual value of actual work done" fixed fee model over the contracted-for contingency model.

16

matter in the light of the testimony, the amount in controversy, the nature of the case, and our common knowledge and experience as lawyers and judges." Mid-Continent, 205 F.3d at 232 (quoting Giles v. Cardenas, 697 S.W.2d 422, 429 (Tex. App. 1985, writ ref'd n.r.e.)). All of the factors outlined by this court in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), and subsequently adopted into Texas law by the Texas Supreme Court are to be considered. See Arthur Andersen, 945 S.W.2d at 818. However, it is well established that the most critical factor in determining an award of attorneys' fees is the "degree of success obtained" by the victorious plaintiffs. Romaguera, 162 F.3d at 896 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Moreover, the requested fees must bear a reasonable relationship to the amount in controversy or to the complexity of the case. Jerry Parks Equip. Co. v. Southeast Equip. Co., 817 F.2d 340, 344 (5th Cir. 1987).

The award of $712,000 as attorneys' fees in this case was more than three times the trebled damages award and more than nine times the actual damages. Such disproportion alone does not render the award of attorneys' fees excessive. See Gorman v. Countrywood Property Owners Assoc., 1 S.W.3d 915, (Tex. Ct. App.--Beaumont 1999, pet. denied)(attorney's fee award 2.5 times larger than actual damages was not excessive). However, Northwinds' attorneys were not very successful in their prosecution of this suit: following this decision, Northwinds will have prevailed on only two

17

of its original laundry list of claims; the actual damages awarded to Northwinds are a tiny fraction of the multi-million dollar recovery it sought; and Northwinds took nothing on its key theory that Wausau's actions reduced Northwinds' profits by convincing its customers and potential customers that it ran an unsafe operation. Indeed, the only front on which Northwinds' attorneys enjoyed outright success was in convincing the jury to award full attorneys' fees.

On the other side of the ledger, this was a complex case to litigate, as it involved two appeals to this court, the pursuit of administrative remedies, and a full trial. We review an attorneys' fee award for abuse of discretion. Although the basic damage award was far less than Northwinds sought, and although Northwinds' attorneys contractually agreed to a contingent fee, we cannot overlook the complexity of the case, Wausau's failure to challenge the reasonableness of the fee amount, and the sound judgment of the trial judge who shepherded this case. The award must be sustained.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

18