IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2008

Charles R. Fulbruge III
Clerk

No. 08-20252
Summary Calender

QUANTA SERVICES INC

Plaintiff-Appellee

V.

AMERICAN ADMINISTRATIVE GROUP INC, formerly known as Gallagher
Benefit Administrators Inc

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
Case No. 4:06-CV-1827

Before  BENAVIDES, CLEMENT, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Quanta Services, Inc. obtained a jury verdict that American Administrative Group, Inc. (AAG) breached an oral agreement to record the health insurance termination events of Quanta's former employees in Quanta's human resources software program.  Specifically, the jury found that AAG failed to provide this service with respect to a former Quanta subsidiary employee, Roy

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Stouder, causing Quanta to continue paying Stouder's medical benefits for fourteen months beyond his legal eligibility. AAG seeks reversal of the jury's verdict on a number of grounds, none of which warrant reversal. Accordingly, we affirm the district court's judgment.

## I. FACTS

In January 2002, AAG agreed to provide third-party administrator healthcare benefits to Quanta, a national utility contractor. AAG's services to Quanta included, among other things, entering COBRA health insurance termination information into Quanta's human resource software program, known as the Employease program. COBRA coverage is the group health coverage that Quanta makes available to its former employees in exchange for a monthly premium. Quanta relies on the Employease program to pay its former employees' COBRA benefits. Thus, as long as a former employee remains active in the COBRA portion of the Employease program, the employee will continue receiving benefits despite any lapse in eligibility.

In late 2004, Quanta informed AAG that it planned to terminate AAG's medical third-party administrator services but requested that AAG continue providing COBRA administrative services, including entering COBRA termination information into the Employease program. Thereafter, Quanta hired CIGNA as its new third-party administrator of medical benefits. In this capacity, CIGNA relied on the information in Quanta's Employease program to determine which of Quanta's former employees should receive COBRA benefits.

Although AAG submitted a proposal for AAG's "stand alone" COBRA administrative services in late 2004, the parties never reached a written agreement. According to Quanta, AAG continued to provide these services under an oral contract.

In July 2003, Stouder ceased his employment with Quanta's subsidiary, GEM, and elected to receive COBRA coverage. Stouder's eligibility for COBRA

benefits lapsed in late 2004. Quanta alleges that AAG failed to enter Stouder's COBRA termination information into the Employease program at this time, although AAG did inform Stouder by letter of the lapse in his eligibility. Nevertheless, from August 2005 through February 2006, Stouder falsely represented to his healthcare providers that he was still a participant in Quanta's COBRA insurance plan. Because Stouder was incorrectly listed as "active" for benefits in the COBRA portion of the Employease system despite the lapse in his COBRA eligibility, CIGNA processed and paid approximately $200,000 in medical bills incurred by Stouder from Quanta's self-funded health plan.

Quanta contends that it discovered AAG's failure to terminate Stouder's status in the COBRA portion of the Employease program in January 2006, and filed this lawsuit against AAG shortly thereafter. A jury returned a verdict in Quanta's favor, finding that AAG breached an oral agreement with Quanta to enter COBRA termination information in the Employease program and awarded Quanta $100,000 in damages. The district court awarded Quanta $116,767 in attorneys' fees and entered judgment on the verdict. AAG appeals.

## II. DISCUSSION

### A. Failure to Grant Summary Judgment and Directed Verdict

AAG raises a number of issues on appeal, some of which warrant more discussion than others. Initially, AAG contends that the district court erred in denying its motion for summary judgment and, alternatively, that the evidence at trial was insufficient to support the jury's verdict. Both arguments lack merit. A party cannot challenge the denial of a motion for summary judgment on the merits following the district court's entry of judgment on an adverse jury verdict. See Brown v. Slenker, 220 F.3d 411, 421 n.9 (5th Cir. 2000); Black v. J.I. Case Co., 22 F.3d 568, 569-70 (5th Cir. 1994). Generally, we could review the issues raised by AAG's motion for summary judgment in the context of its

preverdict motion for judgment as a matter of law under FED. R. CIV. P. 50(a). Brown, 220 F.3d at 421 n.9. But AAG neither re-urged its Rule 50 motion postverdict nor filed a motion for new trial under FED. R. CIV. P. 59, and thus waived these challenges. Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 400-01 (2006); Downey v. Strain, 510 F.3d 534, 543 (5th Cir. 2007). Accordingly, our review is limited to plain error. Polanco v. City of Austin, 78 F.3d 968, 974 (5th Cir. 1996). Under this standard, we ask "only whether the plaintiff has presented any evidence in support of his claim." Id. (emphasis in original). Applying this deferential standard, the evidence was plainly sufficient to support the jury's verdict.[1]

B. Exclusion of Testimony

AAG also contends that the district court erred in excluding the testimony of former Quanta employee Kristi Prevost, who was not disclosed in discovery or on AAG's witness list.

At trial, one of AAG's principle defenses was Quanta's purported failure to mitigate its damages by ceasing payment of Stouder's COBRA benefits at an earlier date. In support of this argument, AAG relied on a January 11, 2006 email chain between Quanta employees Kristi Prevost and Denise Schoth, arguing that certain statements made by Prevost in the emails demonstrated Quanta was aware of the lapse in Stouder's COBRA eligibility months before it stopped paying his benefits. In contrast, Quanta argued that the email chain itself was the first notice it received of the lapse in Stouder's COBRA eligibility, and Quanta elicited testimony to this effect at trial. According to AAG, this testimony was an "unexpected" and "surprising" interpretation of the email

---

[1] AAG points to testimony stating that its employee Betsy Shelton had the authority to generate and negotiate the provision of COBRA services but lacked the authority to sign an agreement to provide such services. However, the jury was adequately instructed on both actual and apparent authority. AAG does not contend that Shelton lacked apparent authority and has not otherwise briefed the issue.

chain that contradicted its plain meaning. Accordingly, AAG attempted to call Prevost, a witness it had not previously disclosed, to rebut the testimony of Quanta's witnesses.

The district court excluded Prevost's testimony based, in part, on AAG's failure to disclose Prevost on the pretrial witness list.[2] We will not disturb "a trial court's decision to exclude evidence as a means of enforcing a pretrial order . . . absent a clear abuse of discretion." Geiserman v. MacDonald, 893 F.2d 787, 790 (5th Cir. 1990). AAG argues that it was not required to include Prevost on the pretrial witness list because the parties' joint pretrial order permitted the calling of previously undisclosed "rebuttal or impeaching witnesses, the necessity of whose testimony [could not] reasonably be anticipated before the time of trial." We disagree that Prevost constituted a rebuttal or impeaching witness in this situation. As the pretrial order recognizes, "a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." Morgan v. Commercial Union Assurance Cos., 606 F.2d 554, 556 (5th Cir. 1979). Here, Quanta specifically argued in its summary judgment motions that the January 11, 2006 email chain was the first notice it received that Stouder continued to receive COBRA benefits despite the lapse in his eligibility. Thus, it should have been clear to AAG that the proper interpretation of the January 11, 2006 email chain was very much in dispute and that Quanta would attempt to elicit testimony contradicting what AAG perceived to be the email chain's plain meaning. Accordingly, Prevost was a witness that AAG had to disclose on

---

[2] The district court also excluded Prevost's testimony because AAG had knowledge of Prevost's current contact information yet failed to provide it to Quanta as required by FED. R. CIV. P. 26(a). FED. R. CIV. P. 37(C)(1) imposes a mandatory sanction prohibiting the introduction of evidence that, without substantial justification, has not been disclosed as required by Rule 26(a) unless the failure to disclose is harmless. AAG has not substantially justified its failure to provide Quanta with this information and Quanta alleges that it did not have the information prior to trial. Accordingly, the failure to disclose was not harmless.

the pretrial witness list. We conclude that the district court properly exercised its discretion in excluding Prevost's testimony.

## C. Jury Charge

AAG also maintains that the district court erred by failing to submit certain proposed questions and instructions to the jury.

### 1. Standard of Review

District courts enjoy substantial latitude in formulating jury instructions. Kanida v. Gulf Coast Med. Pers. LP, 363 F.3d 568, 578 (5th Cir. 2004). We review the jury charge and the verdict form for abuse of discretion. Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 153 (5th Cir. 2004). In resolving a challenge to the district court's instructions, we apply a two-part test. The party challenging the instructions must first "demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Russell v. Plano Bank & Trust, 130 F.3d 715, 719 (5th Cir. 1997) (internal quotation marks omitted). Second, even where a jury instruction was erroneous, "we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case." Id. (internal quotation marks omitted).

A district court's refusal to give a proffered question or instruction constitutes reversible error only if the question or instruction: (1) constituted a substantially correct statement of the law, (2) was not substantially covered by the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim or defense. Kanida, 363 F.3d at 578.

Applying these principles, we conclude that the district court properly instructed the jury.

### 2. Discussion

a. Contract Formation

AAG contends that it was prejudiced by the district court's failure to use the word "contract" in its charge, and by the district court's failure to instruct the jury regarding the elements needed to form a legally binding contract. Specifically, AAG requested the following instruction:

> Plaintiff must prove the existence of a contract that contained the terms Quanta seeks to enforce. A contract may be either written or oral. Creation of a contract requires an offer, an acceptance, consideration, and a meeting of the minds.

AAG also submitted a proposed question on the contract formation issue. The question asked the jury whether a "contract" existed between the parties in which AAG agreed to enter COBRA termination events into Quanta's Employease program. The court rejected AAG's proposed instruction and question and instead submitted a question asking the jury whether the parties agreed that AAG would enter COBRA termination events into the Employease program. The court proceeded to instruct the jury as follows:

> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealings. You may not consider the parties' unexpressed thoughts or intentions.

Notably, the contract formation question and instruction submitted by the district court came directly from the Texas Pattern Jury Charge. See TEXAS PATTERN JURY CHARGES PJC 101.1, 101.3. While the pattern charges are not binding, they are persuasive. Melissinos v. Phamanivong, 823 S.W.2d 339, 343 (Tex. App.–Texarkana 1991, writ denied). The district court's charge is typical of Texas state courts' charges on this state law question. See, e.g., Arthur J. Gallagher & Co. v. Dieterich, No. 05-07-00239-CV, 2008 Tex. App. LEXIS 8151, *4 (Tex. App.–Dallas Oct. 27, 2008, no pet.) (using language identical to that used by district court here); Bowen v. Robinson, 227 S.W.3d 86, 90 n.2 (Tex. App.–Houston [1st Dist.] 2006, pet. denied) (same). The word "agreement" is

7

commonly used because the determination of whether an agreement is a legally binding contract is a question of law, whereas the question, when disputed, of whether an agreement was reached is one of fact.  See Komet v. Graves, 40 S.W.3d 596, 601-02 (Tex. App.–San Antonio 2001, no pet.).  It can hardly be an abuse of discretion for a federal district court to charge the jury in a manner pervasively used by the state which provides the governing law.

Moreover, by asking the jury to look to the objective facts and determine whether AAG and Quanta reached an agreement, the district court's instruction adequately encompassed the concepts of offer, acceptance, and meeting of the minds.  A "meeting of the minds" is nothing more than an agreement, see W. Brokerage & Supply Co. v. Reclamation, 93 S.W.2d 393, 394 (Tex. 1936) (using the terms meeting of the minds and agreement interchangeably in the contract context), and the concepts of offer and acceptance are implicit within the question "did the parties agree?"

AAG also faults the district court for failing to instruct the jury that a binding contract requires consideration.  Quanta contends that it reached an oral agreement that AAG would continue services for COBRA participants on the same terms as before, terms which included payment.  AAG denied the agreement.  Thus, the question was agreement, not consideration.  It is also undisputed that Quanta paid AAG for the continued provision of its COBRA services, and thus the evidence did not support a question on failure of consideration.  To the extent that AAG challenges the adequacy of the consideration paid by Quanta for AAG's provision of Employease data entry services, that was a question of law for the court, not the jury.  See Williams v. Hill, 396 S.W.2d 911, 913 (Tex. Civ. App.–Dallas 1965, no writ.).

b. Damages

AAG further contends that the district court failed to instruct the jury on consequential damages. But the court instructed the jury at length regarding damages. Those damage instructions included the following:

> You may award compensatory damages only for injuries that Plaintiff proves were proximately caused by Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of Plaintiff's damages, no more and no less. Damages are not allowed as punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which Plaintiff has actually suffered.

We conclude that the district court adequately instructed the jury on damages.

### c. Commercial Impracticability

AAG further contends that the district court erred in refusing to submit to the jury AAG's defense of commercial impracticability. AAG asserts that an instruction on the defense was warranted because the evidence at trial showed that the Employease program did not always properly save inputted data.

Although the doctrine of commercial impracticability constitutes a defense to the performance of a contract under Texas law, Centex Corp. v. Dalton, 840 S.W.2d 952, 954 (Tex. 1992), we do not find the doctrine applicable to these facts. The Texas Supreme Court has adopted the Restatement's articulation of the doctrine: "Where . . . a party's performance is made impracticable . . . by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged . . . ." Id. (quoting RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981)). The comment under § 261 states that events that come within the rule are generally due either to "acts of God" or to acts of third parties. RESTATEMENT (SECOND) OF CONTRACTS § 261 cmt. d. In contrast, "[i]f the event that prevents the obligor's performance is caused by the obligee, it will ordinarily amount to a breach by the

latter." Id. Here, AAG's argument is that Quanta's system did not perform adequately. Commercial impracticability simply does not fit the facts presented. Thus, the district court did not abuse its discretion in excluding AAG's commercial impracticability question.

D.  Attorney's Fees

Finally, AAG contends that the district court abused its discretion by awarding excessive attorney's fees to Quanta. AAG notes that while Quanta sought close to $200,000 in damages, the jury awarded only $100,000, and thus AAG argues that Quanta should receive only half of the $116,767.68 that the district court awarded in fees.

In diversity cases such as these, attorney's fees awards, which are "entrusted to the sound discretion of the trial court," are governed by state law. Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc., 907 F.2d 1571, 1575 (5th Cir. 1990). In determining whether attorney's fees are excessive, this Court is "entitled to look at the entire record and to view the matter in light of the testimony, the amount in controversy, the nature of the case, and our common knowledge and experience as lawyers and judges." Mid-Continent Casualty Co. v. Chevron Pipe Line Co., 205 F.3d 222, 232 (5th Cir. 2000) (quoting Giles v. Cardenas, 697 S.W.2d 422, 429 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.)). The factors articulated by this Court in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), to the extent adopted by the Texas Supreme Court in Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997), are all relevant to this inquiry. While the amount of damages that a plaintiff recovers is certainly relevant to the proper award of attorney's fees, it "is only one of many factors that a court must consider when calculating an award of attorneys' fees." Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 803 n.42 (5th Cir. 2006) (citation omitted). But see Northwinds Abatement, Inc. v. Employers Ins. of Wausau, 258 F.3d 345, 354 (5th Cir. 2001) (noting that the

"degree of success obtained" by a prevailing plaintiff is the "most critical factor" in determining an award of attorney's fees). Under Texas law, disproportion alone will not render an attorney fee award excessive. See Northwinds, 258 F.3d at 355 (citing Gorman v. Countrywood Prop. Owners Ass'n, 1 S.W.3d 915 (Tex. App.–Beaumont 1999, pet. denied)); Saizan, 448 F.3d at 803 (noting that "there is no per se proportionality rule"). Indeed, Texas appellate courts have found awards reasonable even in situations where the amount of attorney's fees far surpasses the amount of actual damages. See, e.g., Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc., 178 S.W.3d 98, 209-10 (Tex. App.–Houston [14th Dist.] 2005, no pet.).

In making its fee award, the district court noted that the case involved hundreds if not thousands of documents, written discovery, several depositions, and lengthy competing motions for summary judgment and responsive motions. The court observed that nothing in Quanta's billing records suggested a lack of reasonableness or necessity to the work it performed. Under these circumstances, we agree with the district court that the lack of proportionality between Quanta's attorneys' fees and its actual damages does not alone render the fee award excessive. The award is sustained.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.