United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 20, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

05-30517

---

ARMAND BOURDAIS, ET AL

Plaintiffs,

MICHAEL P CALAMARI, JR; FREDERICK H KNECHT, JR; KEITH A LABARRIERE; GLEN J LAWSON; SHAWN D MURPHY; GARY E SMILEY; FRANCIS A WILLIAMS II; CHRISTOPHER D WREN

Plaintiffs-Appellees,

ARMAND BOURDAIS; DAVID H ASHBURN; GLEN A BAGERT; DOUGLAS P BALSER; ALLEN J BLANCHARD; THOMAS J BURNS, JR; SCOTT A CHAPPUIS; LEONARD R DAIGLE; MICHAEL D DONALDSON; JAMES A FINCHER; RONALD G FIORELLO; GERALD L FORSTER; TIMOTHY G GLEASON; MARK J GRUNBERG; ROBERT A HENDERSON; RICHARD K HIRSTIUS; RICHARD S JOHNSON; CHARLES N JONAU, JR; JOSEPH J JURISICH; THEODORE A KREGER, JR; VICTOR J LAVACA; STEVEN D LAMBERT; PHIL S LOCICERO; EDWARD M LOMBARD; DUDLEY R MAJOR; RICHARD B McCURLEY; DAVID F NICK; PETER M PANQUERNE; FRANK A PELICANO, JR; ADAM W POMMIER; KELLY J PORCHE; ERIK J SCHNEIDER; RONALD J SCHWANKHART, JR; MELVIN L SEEGER; GERALD R SEIDELL; HANSON J SMITH; MICHAEL P SMITH; DAVID K SPILBERGER; PAUL A TEMPLET, JR; DONALD J THOMPSON; PETER S ULI, JR; JAMES F VANCE; GLEN D WALLACE; WILLIAM J YOUNG

Plaintiffs-Appellees-Cross-Appellants,

v.

NEW ORLEANS CITY

Defendant-Appellant-Cross-Appellee,

MARC H MORIAL, Individually and in His Official Capacity as Mayor of the City of New Orleans; J MICHAEL DOYLE, JR, Individually and in His Official Capacity as Director of Personnel for the New Orleans Department of City Civil Services; NEW ORLEANS CITY CIVIL SERVICE COMMISSION; WARREN E MCDANIELS, Individually and in His Official Capacity as Superintendent of the New Orleans Fire Department; SIDNEY J BARTHELEMY; WILLIAM J McCROSSEN; NEW ORLEANS FIREFIGHTERS ASSOCIATION

1

Appeals from the United States District Court for the
Eastern District of Louisiana

Before REAVLEY, JOLLY, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This appeal arises out of a lawsuit filed in 1999 by a number of Caucasians who, in 1991, applied to be fire recruits with the New Orleans Fire Department (NOFD). New Orleans (the City) used race as a factor in its fire recruit hiring policy, and the plaintiffs alleged that this impermissibly caused their hiring delays.

## I.  BACKGROUND

The City administers a written test to applicants seeking to become firefighters for the NOFD. The plaintiffs all took this aptitude test in 1991 and their scores were recorded on the 1991 Register.  If an applicant received a passing score on the test, he was then required to pass further screening (agility test, drug screening, medical background check, etc.) before being placed on a list of recruits eligible for hire.

The City hired seven classes of recruits from the 1991 Register and accompanying eligibility lists over the next few years.  Class One was hired March 22, 1992.  None of the plaintiffs in this suit were hired in Class One.  Each plaintiff was hired at

some point between September 8, 1992 (Class Two) and August 21, 1995 (Class Seven).

While NOFD previously hired applicants from the eligibility lists top down from the highest score on the test, the 1991 applicants were subjected to a policy whereby NOFD would hire one African American for every Caucasian. This resulted in African Americans getting hired before Caucasians who had higher test scores.

The City's liability for this hiring policy was established through two separate lawsuits—*Lalla* and *Courtade*[1]—instituted in 1996 and concerning the same discriminatory practice. In those cases, unlike the plaintiffs here, none of the applicants were hired into any of the seven classes of recruits from the 1991 Register. On May 13, 1998, the *Lalla* plaintiffs deposed former Fire Superintendent William J. McCrossen who testified that the 1991 applicants were hired using a racial quota system. On March 5, 1999, the *Lalla* plaintiffs won their motion for summary judgment establishing that the hiring policy violated their Fourteenth Amendment right to equal protection.

Two months later, on May 10, 1999, plaintiffs brought this suit to recover back pay and lost benefits attributable to their hiring delays. The district court, after trial, found that the

---

[1] *Lalla, et al. v. City of New Orleans, et al.*, Civ. A. 96-2640; *Courtade, et al. v. City of New Orleans, et al.*, Civ. A. 96-2658.

hiring policy did cause delay in most of the plaintiffs' eventual hires and awarded those members back pay, but denied damages for lost pension benefits.

## II.  DISCUSSION

The City's principal argument at trial—and only basis for appeal—is that the 1999 lawsuit was untimely.  It argues that the applicable one-year statute of limitations began to run when the hiring decisions were made or, at the very latest, when the *Lalla* and *Courtade* suits were filed in 1996.

Thirteen plaintiffs cross-appeal the district court's finding that they were not entitled to damages because they could not show they were harmed by the hiring policy, and the plaintiffs collectively cross-appeal the district court's refusal to award compensation for lost pension benefits.

A. Prescription

The central issue is whether the *Lalla* and *Courtade* suits, filed years before this suit, should have put plaintiffs on notice of their causes of action, thereby triggering the one-year statute of limitations and making this suit untimely.[2]

---

[2] This is not a class action, and if certain plaintiffs knew or should have known of their causes of action that would not impute the same knowledge to all of the plaintiffs.  Nonetheless, the plaintiffs' knowledge is often discussed collectively because, at trial, the City focused on facts—such as earlier litigation and the presence of a NOFD "rumor mill"—that it argued should have put all of the plaintiffs on notice of their claims.  It argued that all of these plaintiffs should have known of their claims for the same reasons.

4

*1. Standard of Review*

The district court found after trial that the plaintiffs neither knew nor should have known of their causes of action before Superintendent McCrossen's deposition on May 13, 1998, thus suspending the statute of limitations until that day. This Court reviews such determinations, when made after trial and not on summary judgment, for clear error. *See Colonial Penn. Ins. v. Mkt. Planners Ins. Agency*, 157 F.3d 1032, 1036 (5th Cir. 1998); *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1562 (5th Cir. 1985).

*2. The Statute of Limitations and* Contra Non Valentem

Plaintiffs assert their discriminatory hiring claims under the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. §§ 1981, 1983, 1985, and corresponding state statutes. In § 1983 claims, the applicable statute of limitations is that which the state would apply in an analogous action in its courts. *Pegues v. Morehouse Parish Sch. Bd.*, 632 F.2d 1279, 1280-81 (5th Cir. 1980). In accordance with applicable Louisiana law, we apply a one-year liberative prescriptive period to these claims. *See* LA. CIV. CODE art. 3492.

The discriminatory acts in this case took place between 1992 and 1995, when the plaintiffs were denied hiring preference based on race. This suit was not filed until 1999, well beyond the one-year limitations period. Once it is established that the statutory limitations period has run, the plaintiffs have the burden to prove

5

that some exception to prescription applies. *Terrebonne v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

The plaintiffs argued, and the district court found, that the *contra non valentem* doctrine operated to suspend the limitations period, making their claims timely. This doctrine applies in four distinct instances under Louisiana law, but the only one relevant here is that prescription is suspended "when the plaintiff does not know nor reasonably should know of the existence of the cause of action." *Id.* at 884 n.37.[3] "It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action. Once a claimant learns that she has been injured, the burden is on her to determine whether she should file suit." *Colonial Penn.*, 157 F.3d at 1034; *see also Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La. 1987).

The plaintiffs argue that the limitations period for their claims was suspended until the end of 1998, when each individually learned that his hiring delay was caused by the discriminatory hiring policy.[4] The City counters that earlier litigation should have either alerted the plaintiffs that they were discriminated

---

[3] This is a variant of what is typically referred to as the "discovery rule" in other jurisdictions.

[4] The plaintiffs consistently claimed that they learned of these claims when contacted by a lawyer in December, 1998, or January, 1999.

against or given them sufficient notice to investigate possible claims. Trial testimony suggests that a few of the plaintiffs heard vague rumors about the *Lalla* litigation more than a year before this suit was filed, but did not know that it affected them. The district court found that, despite possibly knowing of the *Lalla* litigation, "the *Bourdais* plaintiffs were not similarly situated because they *had* been hired from the 1991 Register and Lalla had *not* been hired as a Fire Recruit from that Register when he filed his lawsuit."

Whether the extremely limited knowledge certain plaintiffs had of the *Lalla* and *Courtade* suits—and the others arguably should have had—triggered the statute of limitations is a fairly close question. The most instructive case from this circuit is *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554 (5th Cir. 1985).[5] In that case, a woman suspected that she was denied a promotion due to sex-based discrimination and voiced those suspicions years before she brought her suit. Nonetheless, this Court found that her mild suspicions were not sufficient to put her on notice and to trigger the limitations period. This Court noted that the plaintiff "did not know and could not reasonably be expected to have realized that" she was the victim of discrimination. *Id.* at 1561; *but cf.*

---

[5] *Glass* concerned a "continuing violation," which is not an issue before this court. Nonetheless, the question in *Glass* was nearly identical to the one here. *See Glass*, 757 F.2d at 1561.

7

*Eastin v. Entergy Corp.*, 865 So.2d 49 (La. 2004) (plurality opinion) (limitations period for employee's discriminatory discharge claim begins immediately upon termination, regardless of whether circumstances of discharge merit suspicion).

Like in *Glass*, we cannot conclude that these plaintiffs should have known about or should have investigated potential discriminatory hiring claims. Even if they had knowledge of the *Lalla* litigation, that knowledge would not necessarily raise serious suspicions among these plaintiffs who NOFD actually hired from the 1991 Register. One reasonable conclusion they could draw is, because they were hired, they were not subject to the same discrimination the *Lalla* and *Courtade* plaintiffs complained of.

Given the differences between these plaintiffs and those in the *Lalla* and *Courtade* suits, it was not clearly erroneous for the district court to find that prescription did not begin to run for these plaintiffs before May 13, 1998.[6]

---

[6] At oral argument, the City asked this Court to find as a matter of law that once an injured party realizes he has a claim, all similarly-situated individuals injured by the same act should also be found to have knowledge of their claims. There is no legal support for that approach. That proposed rule is based on the City's misplaced belief that prescription begins to run once a plaintiff *could* have known of his claims, which is a critically different standard than the *should* have known standard actually applicable under Louisiana law.

While the City makes a reasonable policy argument that liability for past acts should not be perpetual, it is an argument that is better brought before the legislature. In certain areas, such as medical malpractice, the Louisiana

8

B.  Refusing Damages to Thirteen Plaintiffs

    After finding that the plaintiffs' claims had not prescribed,
the district court denied damages to seventeen plaintiffs.
Thirteen of them cross-appeal.  The district court found that those
plaintiffs did not prove they were eligible for hire into an
earlier class and had "not met their burden of showing that they
are entitled to damages for delay in hiring."  Plaintiffs argue
that, given the existence of a discriminatory policy, the district
court should have shifted the burden to the City to prove that the
hiring delays would have occurred even absent the infirm policy.
*See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.
274, 284 (1977).

    Assuming that *Mt. Healthy* is applicable in this context,[7] the
burden only shifts to the defendant after a plaintiff proves that
(1) there was an adverse employment action, and (2) race played a
"substantial or motivating factor" in it.  *See Brady v. Fort Bend
County*, 145 F.3d 691, 711–12 (5th Cir. 1998).  These thirteen

---

legislature has shown a willingness to limit the *contra non
valentem* principle.  *See* LA. REV. STAT. ANN. § 9:5628 (requiring
that a medical malpractice claim be brought within three-years of
the wrongful act, regardless of the plaintiff's knowledge of her
claim).

[7] This Court has held, in a decision abrogated on other grounds,
that the *Mt. Healthy* burden-shifting methodology applies to
racial preference cases.  *Hopwood v. Texas*, 78 F.3d 932, 956 (5th
Cir. 1996), *abrogated by Grutter v. Bollinger*, 539 U.S. 306
(2003).

plaintiffs failed to show they were eligible for hire in any class earlier than the ones they were hired into. In other words, they failed to show that they suffered any adverse employment action whatsoever.

While these plaintiffs' names were on the 1991 Register, they did not show that they were on the eligibility lists and passed the additional screening in time to be eligible for hire into an earlier class. The district court found that of these plaintiffs, "none produced any evidence to show that they were actually eligible for hire on the dates they claim they should have been hired."

The plaintiffs complain that the eligibility lists were incomplete and point to individuals who were hired into classes even though their names were not on the accompanying lists. Even if the City's eligibility lists were incomplete, that does nothing to discharge the plaintiffs' initial burden of demonstrating that an adverse action occurred. They could have shown through other means that they were eligible for hire into earlier classes, but plaintiffs never point us to any evidence satisfying this initial burden.[8]

---

[8] The district court's discussion of this point is somewhat misguided. It discusses the plaintiffs' failure to prove they were eligible for hire into an earlier class as an issue of causation and damages, skipping the initial question of whether an adverse employment action ever took place. Unlike wrongful discharge claims, where a dispute about whether the plaintiff was discharged is unlikely, a delayed hiring claim will often give

10

The district court did not err in placing the burden of showing an adverse employment action took place on each plaintiff.

C.  Pension Damages

Plaintiffs argue that the hiring delays cause their pension benefits to be perpetually smaller than they should be because those benefits are calculated in relation to the number of years each employee serves.  While the district court awarded plaintiffs damages for back pay and lost seniority status, it denied them monetary damages for the accompanying delay in accumulating and receiving pension benefits.  Plaintiffs cross-appeal that decision.

The district court treated the request for lost pension benefits as a claim for front pay and that classification is not challenged here.[9]  Front pay awards are reviewed for abuse of discretion.  *Reneau v. Wayne Griffin & Sons*, *Inc.*, 945 F.2d 869, 869 (5th Cir. 1999) (citations omitted). The district court is afforded broad discretion in determining awards for lost future benefits.  *See Deloach v. Delchamps, Inc.*, 897 F.3d 815, 822 (5th

---

rise to a question of fact about whether the plaintiff was hired at the earliest appropriate time.  While the district court inartfully discusses this as an issue of damages, the factual finding is absolutely clear, "that all were hired into the first Recruit class for which they were actually eligible to be hired."

[9] Whether a plaintiff's delayed accumulation of pension benefits should be considered back pay or front pay appears to be an unresolved issue in this Circuit.  Neither party briefed this issue and it has therefore been waived.  We do not disrupt the district court's classification of this award as front pay but note that the issue remains undecided.

Cir. 1990).

The district court found that awarding "present monetary damages for the loss of a prospective benefit that either may not ultimately be earned, or that may actually be earned and collected in full in the future, would go beyond making plaintiffs' [sic] whole for the unlawful discrimination they suffered. It would provide a windfall bonus." The court reasoned that the pensions will not vest unless each plaintiff continues to work at NOFD for twenty years, a scenario too speculative to base a monetary award on.

We find that the district court did not abuse its discretion in refusing to award monetary damages for the delay in accumulating and receiving pension benefits. The dollar amount of damages attributable to the delayed pension benefits is extremely speculative, and given the uncertainty of whether the pensions will ever vest, the district court was within its discretion to find that awarding such damages would go beyond making the plaintiffs whole. Given the speculation involved in calculating the amount of monetary harm incurred, if any, it was not an abuse of discretion to refuse such an award.

## III. CONCLUSION

The district court did not clearly err when it found that each of the present plaintiffs' claims were timely, it appropriately dismissed thirteen plaintiffs who failed to show they suffered from

12

an adverse employment decision, and it was within its discretion to deny pension-related damages.  Accordingly, we AFFIRM the district court's judgment and award.