# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 2, 2013

Lyle W. Cayce
Clerk

No. 11-10586
cons w/
No. 11-10988

RICHARD MILLER,

Plaintiff - Appellee Cross-Appellant

v.

RAYTHEON COMPANY,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Northern District of Texas

Before JONES, GARZA, and PRADO, Circuit Judges.

EDITH H. JONES, Circuit Judge:

A jury found that Raytheon Company ("Raytheon") willfully violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et seq.*, by terminating Richard Miller ("Miller") because of his age. The district court denied Raytheon's motion for judgment as a matter of law ("JMOL"), substantially reduced the jury's finding of $17 million in damages, and awarded attorneys' fees. Both parties appealed. We affirm the finding of liability, affirm in part the award of liquidated damages, and vacate the liquidated damages award for an enhanced pension because it was a future, not

No. 11-10586
cons w/
No. 11-10988

past loss, vacate the damages for mental anguish, reject Miller's issues on cross-appeal, and remand for reconsideration of the front pay award.

## I. Background

Miller worked for Raytheon or a predecessor company for almost three decades in a variety of roles, primarily in supply chain management. In 2006, Miller was moved to a stand-alone role working on special projects, where he reported to Robert Lyells ("Lyells"). Miller initially performed well in his new position, earning a "Meets Expectations" rating in March 2007. After failing to meet some deadlines, however, Miller received a "Needs Improvement" rating on his 2007 mid-year review.

Raytheon initiated a reduction in force ("RIF") in early 2008. Like all other managers, Lyells reviewed his employees for a possible headcount reduction. Raytheon policy dictated that Lyells evaluate his employees, subdivide them into "decisional units," rank them based on a four-factor analysis, and develop a list of employees to recommend for reduction.

Lyells placed the then 53-year-old Miller in a decisional unit with four other employees (ages 34, 49, 54, and 55) considered for termination. A 46-year-old woman who worked in the same organization as Miller and had similar job responsibilities was placed in a decisional unit that was not considered for the RIF. Lyells testified that he recommended that Miller be included in the layoff after determining that Miller's job function was non-essential and his duties could be absorbed by three other employees. Although Miller was purportedly targeted for the RIF due to a budgetary shortfall, at that time Miller's job was neither charged to Lyells's budget nor

2

No. 11-10586
cons w/
No. 11-10988

costing his organization any money. The only employee in Miller's decisional unit not recommended for termination was the 34-year-old. Lyells offered that younger employee retraining and identified a new task for her.

Because Miller had more than twenty years of service, Raytheon's internal Long Service Review Board ("LSRB") reviewed Lyells's lay off proposal. The LSRB directed Human Resources Director Allen Reid and Lyells to search for job opportunities for Miller. Lyells contacted colleagues in other groups at Raytheon to determine whether there were any other positions that fit Miller's skills. He was told there were none, although Miller presented evidence at trial that he was qualified for several positions. Based on the responses from Reid and Lyells, the LSRB approved the layoff. Lyells and Reid terminated Miller at a meeting on March 13, 2008. Miller and his wife testified that the layoff made Miller feel "sucker-punched" and caused him chest pain, back pain, sleep disturbances, and emotional problems.

Miller used Raytheon's internal job board and worked with the human resources ("HR") department to find a new job at Raytheon. On March 27, 2008, Miller met with Amos Wilson from HR and complained that he would be unable to get another job at Raytheon due to his "Needs Improvement" rating. Wilson told Miller to apply for jobs at a lower salary grade and in a different group. When Miller asked Wilson why he would not be considered for a job in the supply chain group, Wilson simply responded, "Because you wouldn't be considered." Miller applied for four jobs at Raytheon, but he was not re-hired.[1]

---

[1] In October 2008, Raytheon's response to Miller's EEOC charge incorrectly stated that he had not applied for any other jobs at the company.

3

No. 11-10586
cons w/
No. 11-10988

Miller filed claims for age discrimination against Raytheon in federal district court under the ADEA and the TCHRA. His Complaint asserted that Raytheon (1) terminated him because of his age; and (2) failed to consider, assist, or place him in another job due to his age. At trial, however, the jury was only asked whether Raytheon discharged Miller because of his age. The jury found that Raytheon terminated Miller in willful violation of both statutes and awarded $352,179 in back pay and $277,000 in lost pension benefits, both of which were doubled as ADEA liquidated damages; $1 million in mental anguish damages; and $15 million in punitive damages pursuant to TCHRA.

Raytheon filed motions for JMOL and a new trial. In denying the motion for JMOL, the district court held that the evidence was sufficient to support the jury's findings; ruled that lost pension benefits were a proper element of back pay rather than front pay; approved liquidated damages based on the jury's finding of willfulness; remitted the jury's award of $1 million in mental anguish damages to $100,000; declined to award punitive damages in order to prevent a double recovery; and awarded Miller $186,628, approximately one year's front pay. The district court did not rule on Raytheon's motion for a new trial. After the district court entered judgment, Miller moved for $711,323 in attorneys' fees. The court granted the motion in part, reducing the number of hours and the hourly rate for an award of $488,437.08. Both parties appealed.

## II. Discussion

Raytheon argues that the district court erred in (1) denying JMOL because

4

No. 11-10586
cons w/
No. 11-10988

the evidence was insufficient to support the jury's finding of age discrimination under the ADEA and TCHRA; (2) refusing to grant its motion for a new trial; (3) concluding the evidence supported the jury's finding of willful discrimination; (4) allowing the jury to consider as back pay the loss of pension benefits set to vest by the trial date; and (5) concluding that the evidence supported the jury's finding of mental anguish.  In his cross-appeal, Miller argues that the district court erred in (1) denying recovery for both liquidated damages under the ADEA and punitive damages under the TCHRA; (2) concluding that the non-economic damages cap under the TCHRA is constitutional according to Texas law; (3) awarding front pay from the date of the verdict rather than from the date of judgment; (4) denying prejudgment interest; and (5) reducing the attorneys' fees. We address each issue in turn.

A.     **Raytheon's Claims**

1.     **Judgment as a Matter of Law**

We review a district court's denial of a motion for JMOL *de novo*, applying the same standard as the district court.  *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th Cir. 2011).  "The jury's verdict can only be overturned if there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005) (internal quotation omitted).

The ADEA and the TCHRA prohibit employers from discharging or otherwise discriminating against any individual because of his or her age. *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461 (5th Cir. 2005). The familiar burden-shifting framework set forth in *McDonnell Douglas Corp.*

No. 11-10586
cons w/
No. 11-10988

*v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), applies to both statutes. *Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001). Under this framework, the employee carries the initial burden of establishing a prima facie case of age discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). If he succeeds, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for terminating employment. *Id.* If the employer satisfies this burden, the burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age. *Gross v. FBL Fin. Servs, Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352 (2009).[2] "[W]hen, as here, a case has been fully tried on its merits, we do not focus on the *McDonnell Douglas* burden-shifting scheme." *Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir. 1999). Instead, we inquire whether the record contains sufficient evidence to support the jury's finding of age discrimination. *Id.*

At trial, Miller presented undisputed evidence that Raytheon made erroneous statements in its EEOC position statement. Miller was told not to apply for jobs in supply chain management and was not selected for a new job at Raytheon, despite Raytheon's policy of searching "every corner of the earth" and "exhausting all opportunities to place the individual" before releasing an employee pursuant to a RIF. Although Raytheon emphasizes that these actions

---

[2] The district court submitted the question of Raytheon's liability under TCHRA as whether age was a "motivating factor" in its decision. Because Raytheon does not contest this submission on appeal, we have no occasion to examine the propriety of this decision. The jury held for Miller.

No. 11-10586
cons w/
No. 11-10988

occurred after Miller's termination, the jury was entitled to view them as circumstantial evidence of discrimination. *Norris v. Hartman Specialty Stores, Inc.*, 913 F.2d 253, 256 (5th Cir. 1990); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 2108 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of [an] explanation that the employer is dissembling to cover up a discriminatory purpose."). Further, Miller presented evidence that at least two similarly-skilled younger employees (ages 34 and 46) were not terminated despite being eligible for the RIF. In totality, this and other evidence adduced by Miller is sufficient for the jury to disbelieve Raytheon's argument that Miller was treated the same as younger employees, which is circumstantial evidence of age discrimination. *Uffelman v. Lone Star Steel Co.*, 863 F.2d 404, 408 (5th Cir. 1989). It is also undisputed that 77% of the employees laid off in supply chain management were at least 48 years old.

Considered in isolation, we agree with Raytheon that each category of evidence presented at trial might be insufficient to support the jury's verdict. But based upon the accumulation of circumstantial evidence and the credibility determinations that were required, we conclude that "reasonable men could differ" about the presence of age discrimination. *Boeing Co. v Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), *overruled in part on other grounds*, *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc). Whether or not this court would have reached the same result, the *Boeing* standard requires affirmance of the jury verdict. *Smith v. Santander*, 703 F.3d 316, 318 (5th Cir. 2012).

No. 11-10586
cons w/
No. 11-10988

## 2.     Motion for a New Trial

The district court did not rule on Raytheon's alternative motion for a new trial.  A motion for a new trial not expressly ruled on is considered to have been denied.  *Performance Autoplex II, Ltd. v. Mid-Continent Gas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003).  The denial of a motion for a new trial by the district court "will be affirmed unless there is a clear showing of an absolute absence of evidence to support the jury's verdict." *Rivera v. Union Pacific R. Co.*, 378 F.3d 502, 506 (5th Cir. 2004).  For the reasons just stated, and the fact that our "standard of review in this situation is more deferential than our review of the denial of a motion for [JMOL]," *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 431 (5th Cir. 2003), Raytheon's arguments for a new trial lack merit.

## 3.     Willful Discrimination under ADEA

Raytheon contends that the district court erred by denying its motion for judgment as a matter of law on this issue of willfulness.  A violation of the ADEA is willful, and liquidated damages may be awarded, when an employer must have "kn[own] or show[n] reckless disregard for the matter of whether its conduct was prohibited by the ADEA."  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S. Ct. 613, 624 (1985); 29 U.S.C. § 626(b).  This standard applies to liability findings based on a company's policy, as in *Thurston*, or its decisions concerning specific individuals.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617, 113 S. Ct. 1701, 1709 (1993).  This court has "upheld jury findings of willfulness when a jury's finding of intentional violation of the ADEA necessarily implied a finding that the employer's proffered explanation for the adverse employment action was pretextual." *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379,

No. 11-10586
cons w/
No. 11-10988

398 (5th Cir. 2002); *see West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 391-92 (5th Cir. 2003). On the other hand, we have overturned jury verdicts finding willfulness where persuaded that no reasonable jury could have found that an employer had knowingly or recklessly disregarded the ADEA. *See*, *e.g.*, *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 230 (5th Cir. 2000). The district court, having observed the trial and carefully reviewed the evidence, concluded that the facts here are "strikingly similar" to those in *Russell*. The court, however, applied *West*, rather than *Russell*, on the basis that *West* appears to require liquidated damages for willful violations unless an employer "incorrectly but in good faith and non-recklessly believes that the statute permits a particular age-based decision." *West*, 330 F.3d at 391.

We cordially disagree with the district court's approach to this extent: *West* should not be read either to contradict *Russell*, or to artificially broaden the traditional scope of "knowing" and "reckless disregard" of the law, or, in the end to conflict with *Hazen*, which stated: "It is not true that an employer who knowingly relies on age in reaching a decision invariably commits a knowing or reckless violation of the ADEA." *Hazen*, 507 U.S. at 617, 113 S. Ct. at 1709. As *Hazen*, and discrimination law in general, emphasizes, these cases are all fact-sensitive and individualistic. Consequently, courts must heed *Hazen*'s forecast that the Supreme Court "continue[s] to believe that the 'knowing or reckless disregard standard' will create two tiers of liability across the range of ADEA cases." *Id*.

This is a close case, as the district court understood, because it is undisputed that Raytheon had to undertake a reduction in force and that it

9

No. 11-10586
cons w/
No. 11-10988

instituted facially age-neutral policies and processes according to which a nondiscriminatory basis for Miller's termination could be justified. Following facially neutral RIF procedures, however, does not necessarily insulate an employer from ADEA liability or from a sustainable finding of a willful violation. Even if Raytheon superficially applied its nondiscriminatory RIF standards to Miller, considerable circumstantial evidence added to the inference of age discrimination that Raytheon went out of its way to avoid rehiring Miller, in contravention of its usual procedures, and to obscure the reasons for its decisions. JMOL was correctly denied on the issue of willfulness.

### 4. Pension Benefits

The jury awarded Miller $277,000 for an enhancement to his ultimate pension benefits that would have vested between the time of his termination in March 2008 and trial in 2010. Raytheon argues that the district court erroneously considered that amount as back pay, which was doubled as part of Miller's liquidated damages. We agree. The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988). The question here is not whether Miller could claim that he lost the opportunity to receive the enhanced pension when he was terminated before it vested at age 55—Raytheon does not deny this claim—but whether the enhanced benefit was properly treated as "back pay" or "front pay." A back pay award is denominated as damages under ADEA and is subject to doubling if a willful violation is found. A front pay award rests within the court's equitable discretion and may not be doubled. *Banks v. Travelers Cos.*,

10

No. 11-10586
cons w/
No. 11-10988

180 F.3d 358, 364-65 (2nd Cir. 1999).

Although Miller became 55 a few months before trial occurred, he had not been employed by Raytheon for nearly two years. Whether he would have stayed with the company during that period and actually qualified for the enhancement is in this case a forward-looking determination from the point of his termination and thus a judgment call like the equitable decision to award front pay. This is reinforced by Miller's testimony that he intended to work until age 70. Any claim for present damages based on enhanced pension benefits he would not receive until up to fifteen years later would have had to be discounted to present value in order to represent Miller's actual loss. *See Skalka v. Fernald Env. Restoration Mgmt.*, 178 F.3d 414, 426 (6th Cir. 1999). As this court noted, "awarding 'present monetary damages for the loss of a prospective benefit that either may not ultimately be earned, or that may be actually earned and collected in full in the future, would go beyond making plaintiffs' [sic] whole for the unlawful discrimination they suffered. It would provide a windfall bonus.'" *Bourdais v. New Orleans City*, 485 F.3d 294, 300-01 (5th Cir. 2007) (quoting the district court).[3] Absent such proof, the enhanced benefits should have been treated as front pay. The judgment must be changed to treat this pension enhancement as front pay and eliminate it as a basis for liquidated damages.

---

[3] As we did in *Bourdais*, *id.* at 301 n.9., we decline to set out an inflexible rule on the treatment of "pension benefits" as damages or front pay under ADEA. The term is ambiguous. In some cases, it refers to employer contributions to a 401(k) plan; in others, to the right to receive certain benefits in the future; in others, the accrual of seniority entitlements to enhanced payments. *Compare e.g.*, *Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374-75 (2d Cir. 2000) ("pension credits" in form of "service and salary credits" coextensive with back pay award should be treated as back pay).

No. 11-10586
cons w/
No. 11-10988

### 5.    Mental Anguish

Raytheon challenges the district court's reduced award of damages for mental anguish. Compensatory damages for emotional harm, including mental anguish, will not be presumed simply because the complaining party is a victim of discrimination. *DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007). The award of damages must be supported by specific evidence of the nature and extent of the harm. *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938 (5th Cir. 1996). Such evidence may include medical or psychological evidence in support of the damage award. *Id.* at 940. A plaintiff's conclusory statements that he suffered emotional harm are insufficient. *See Brady v. Fort Bend Cnty.*, 145 F.3d 691, 719 (5th Cir. 1998).

The district court remitted the jury award for mental anguish from $1 million to $100,000. This claim is premised solely on the testimony of Miller and his wife. Miller presented no expert medical or psychological testimony of the extent of his mental anguish. While Miller testified that he suffered chest pain, back pain, sleep disturbances, he also admitted that he did not take any over-the-counter pain or sleep medications. Nor did Miller seek the assistance of any health care professional or counselor. *DeCorte* is distinguishable because testimony from a psychologist supported the plaintiffs' claims. *DeCorte*, 497 F.3d at 443. Because the Millers' self-serving testimony is legally insufficient, we vacate the mental anguish award.

No. 11-10586
cons w/
No. 11-10988

## B.     Miller's Claims

### 1.      Double Recovery on Damages

Liquidated damages are available for a willful violation of the ADEA. The TCHRA provides for punitive damages where the defendant acted with malice or reckless indifference to the plaintiff's rights. The jury found that Raytheon's actions were willful and awarded punitive damages. To prevent double recovery, the district court awarded Miller only the higher liquidated damages. Miller challenges this ruling.

When a federal claim overlaps with a pendant state claim, the plaintiff is entitled to the maximum amount recoverable under either the federal or state claim. *Cryak v. Lemon*, 919 F.2d 320, 326 (5th Cir. 1990). Miller brought an action for a single injury under a federal statute and a state statute, both of which protect against age discrimination. Accordingly, Miller may recover under only one statute, and the district court correctly granted him the higher recovery available under the ADEA.

### 2.    TCHRA Damage Cap

The jury awarded Miller $15 million in punitive damages. Applying the non-economic damage cap under the TCHRA, TEX. LAB. CODE § 21.2585, the district court remitted the award to $300,000. Miller argues that § 21.2585 violates the Texas Constitution. If Miller's contention is correct, then the judgment would have to reflect the higher state law punitive damage award rather than the ADEA liquidated damage award. The constitutionality of a state statute is a question of law reviewed *de novo*. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011). Texas courts afford state

No. 11-10586
cons w/
No. 11-10988

statutes a strong presumption of constitutionality under the Texas Constitution. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003).

The relevant section of the Texas Constitution states: "Notwithstanding any other provision of this constitution, after January 1, 2005, the legislature by statute may determine the limit of liability for all damages and losses, however characterized, other than economic damages, in a claim or cause of action not covered by Subsection (b) of this section." TEX. CONST. art. III, § 66(c). Miller argues that Subsection (c) either invalidates all existing statutory caps not passed under the procedures detailed in Subsection (e)[4] or that the legislature did not have authority to enact statutory caps before the passage of Subsection (c). By its own terms, Subsection (c) only applies to legislation passed after January 1, 2005. The statutory caps under the TCHRA long predate Subsection (c), and Miller has not demonstrated how these caps were impliedly repealed. Following the plain meaning of Article III, § 66(c), we hold that the district court properly applied the non-economic damage cap under the TCHRA.[5]

---

[4] TEXAS CONST. art. III, § 66(e) ("A legislative exercise of authority under Subsection (c) of this section requires a three-fifths vote of all the members elected to each house and must include language citing this section.").

[5] The closest thing to authority provided by Miller is a case allegedly casting the power of the legislature to enact statutory caps prior to the passage of Subsection (c) into doubt. *Lucas v. United States*, 757 S.W.2d 687, 690 (Tex. 1988) (enforcing the Texas Constitution's "Open Courts" guarantee). But the first criteria of the *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983), test applied by the *Lucas* court is that there be a cognizable common law right of action. The right here is created by statute, and *Lucas* is inapposite.

No. 11-10586
cons w/
No. 11-10988

## 3.    Prejudgment Interest

Miller argues that the district court abused its discretion in denying prejudgment interest.  He concedes that prejudgment interest is not available under the ADEA[6] and cites no case supporting his theory that prejudgment interest is available under the TCHRA.  Accordingly, we hold that the district court did not abuse its discretion.

## 4.    Front Pay

Awards of front pay are reviewed for abuse of discretion.  *Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002).  The district court awarded Miller front pay in the amount of $186,628.00, representing one year's prospective salary.  Miller asserts that the court "effectively" only awarded two months of front pay because ten months of the award accrued after the verdict and before final judgment.  This argument lacks merit.  The district court fully and carefully considered the relevant circumstances in his written opinion and made an  informed decision not to attach the front pay award to a particular date. There was no abuse of discretion.

The district court expressly considered the amount of other damages before arriving at a front pay award.  Among these was the liquidated damages award it attached to Miller's enhanced pension, which we have vacated and shifted to front pay.  We have also vacated the mental anguish award.  Because it is possible that these alterations might change the district court's equitable

---

[6]  "In an ADEA case where liquidated damages are awarded, a court may not award prejudgment interest on either the backpay or the liquidated damage award." *McCann v. Tex. City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993).

No. 11-10586
cons w/
No. 11-10988

calculation of front pay, we remand the front pay award for reconsideration in the court's discretion.

**5.     Attorneys' Fees**

After the district court entered judgment, Miller filed a motion for attorneys' fees under the ADEA. The district court granted Miller's motion in part and denied it in part, reducing both the hours and the hourly rates submitted. Miller only appeals the decrease in the hourly rates. The "district court's factual findings as to . . . the reasonable rates for attorneys' fees are reviewed by this court for clear error." *McClain v. Lufkin Indus., Inc.*, 649 F.2d 374, 380 (5th Cir. 2011).

Miller requested hourly rates of $825, $775, and $400 for his three primary attorneys. These rates were supported by affidavits from two attorneys from his attorneys' firm and an outside attorney. After considering state bar surveys, attorneys fees in similar cases, and the skills of Miller's attorneys, the district court reduced each attorney's requested rate by 30%. The district court was entitled to rely on this information and discount the evidence provided by Miller. *Van Ooteghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir. 1985). Contrary to Miller's assertions, the district court held Miller's attorneys to the same standard as any other attorneys. The record shows that the reduced hourly rates of $577.50, $542.50, and $280 were reasonable, customary rates. *Cf. Fluor Corp. v. Citadel Equity Fund Ltd.*, No. 3:08-CV-1556-B, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011) ("In other cases involving Texas lawyers, the hourly rates range from $220 for associates to $510 for senior partners.") (citing several cases and the range of hourly rates). Because the district court did not commit clear error

16

No. 11-10586
cons w/
No. 11-10988

in reducing the hourly rates, we affirm the award of $488,437.08 in attorneys'
fees.

### III.  Conclusion

For the foregoing reasons, we **AFFIRM** in part, **VACATE** in part, and
**REMAND**.