# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20312

United States Court of Appeals
Fifth Circuit

**FILED**
March 7, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA, ex rel., AMY COOK-RESKA, Relator,

Plaintiff–Appellant,

versus

COMMUNITY HEALTH SYSTEMS, INCORPORATED;
LAREDO TEXAS HOSPITAL COMPANY, L.P.;
WEBB HOSPITAL CORPORATION;
CHS/COMMUNITY HEALTH SYSTEMS, INCORPORATED;
COMMUNITY HEALTH SYSTEMS PROFESSIONAL
   SERVICES CORPORATION,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1565

Before JONES and SMITH, Circuit Judges, and BOYLE, District Judge.*

JERRY E. SMITH, Circuit Judge:**

---

* District Judge of the Northern District of Texas, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20312

Amy Cook-Reska appeals an order granting in part and denying in part her motion for certain attorneys' fees. We affirm.

I.

Cook-Reska worked as a coding specialist for Community Health Systems, Inc. ("CHS"), providing billing services for Laredo Medical Center ("LMC"). Concerned that LMC was charging the government for medically unnecessary inpatient procedures and was allowing improper financial relationships between physicians, Cook-Reska asserted a relator claim against CHS under the False Claims Act ("FCA") in May 2009.[1] Cook-Reska thereafter assisted the government in investigating CHS's practices at LMC.

On March 9, 2011, the government informed Cook-Reska that CHS faced FCA claims and investigations in three other federal courts based on alleged fraud in its emergency department admissions. The government invited Cook-Reska and her attorneys to communicate with the other relators and to participate in the nationwide investigation of CHS's emergency department admissions. The relators agreed to cooperate in the investigation and share any proceeds from their collective claims.[2]

The government, the relators, and CHS entered a global settlement on August 4, 2014. The settlement divided the claims in two: claims regarding emergency department admissions stemming from the nationwide investigation ("ED Claims") and claims of improper billing and referral practices stemming from Cook-Reska's individual investigation at LMC ("Non-ED Claims"). The government awarded Cook-Reska, based on both the ED and Non-ED

---

[1] CHS is the corporate parent of Laredo Texas Hospital Company, L.P., which operates LMC.

[2] There were ultimately seven relators, all of whom agreed to cooperate and share proceeds.

2

No. 15-20312

Claims, a relator's share of $2,141,184.04 plus an interest rate of 2.25% from May 11, 2014, until payment.

Cook-Reska then moved for $3,464,572.50 in attorneys' fees and costs for the ED and Non-ED Claims. CHS moved, pursuant to the FCA's first-to-file rule,[3] to sever and to transfer her motion, as it related to ED Claims, to the Middle District of Tennessee, where the other relators were already litigating with CHS to determine which relator was the first to file the ED Claims and thus entitled to the attorneys' fees. The district court granted the motion and ordered Cook-Reska to amend her motion for attorneys' fees and costs. Specifically, the court ordered her to limit the motion to attorneys' fees and costs related solely to the Non-ED Claims.

Cook-Reska then requested $2,028,019.49, reflecting an $800 hourly rate for her attorneys and $250 for her investigator. Though the court ordered her to limit her motion to the Non-ED Claims, Cook-Reska's attorneys submitted their block-billing time entries that attributed 1024 hours solely to Non-ED Claims, 2144 hours to "Both" Non-ED and ED Claims, and 3540.5 hours solely to the ED Claims. The attorneys claimed that the hours in the "Both" category should be recoverable because the work thereunder would have been required to pursue the Non-ED Claims alone.

The district court awarded $729,381.95, reasoning that Cook-Reska should recover all hours attributable to Non-ED Claims but only the hours attributable to "Both" that preceded her involvement in the nationwide investigation and ED Claims. Additionally, the court reduced the hourly rates from $800 to $550 for her attorneys and from $250 to $125 for her investigator.

---

[3] "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).

No. 15-20312

II.

We review an award of attorneys' fees under the FCA for abuse of discretion. *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 475 (5th Cir. 2009). "Under the abuse of discretion standard, a district court's decision to award attorneys' fees will not be disturbed unless the award is based on (1) an erroneous view of the law or (2) a clearly erroneous assessment of the evidence." *Id.* (quoting *United States ex rel. Bain v. Ga. Gulf Corp.*, 208 F. App'x 280, 282–83 (5th Cir. 2006) (per curiam)). We review underlying decisions of law *de novo* and underlying findings of fact—such as a determination of a reasonable hourly rate—for clear error.[4]

III.

An FCA relator who brings successful claims may recover "reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). The relator also must be the first to file those claims. 31 U.S.C. § 3730(b)(5). The relator has the burden to provide the district court with sufficient evidence to discern the claims for which such fees are recoverable and to determine the number of hours spent. *See Longhi*, 575 F.3d at 475–76; *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990);.

Cook-Reska first challenges the transfer of her motion relating to the ED Claims to the Middle District of Tennessee, which the court based on its factual finding that her ED Claims and Non-ED Claims did not involve a "common core of facts." *See Longhi*, 575 F.3d at 476. We review this factual finding for clear error only, and we find none.

---

[4] *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008); *Structural Metals, Inc. v. S&C Elec. Co.*, 590 F. App'x 298, 306 (5th Cir. 2014) (per curiam).

No. 15-20312

The Non-ED Claims related only to fraudulent billing for cardiac and hemodialysis inpatient services and improper physician referrals at LMC; the ED Claims related to fraudulent billing for services provided to patients sixty-five years of age or older who appeared at an emergency department and remained for two days or fewer at over 100 CHS hospitals across the country. Also, the time entries showed that the lawyers appreciated the factual differences between the ED and Non-ED Claims.[5] Given this evidence, the finding that the ED and Non-ED Claims did not involve a common core of facts was not clearly erroneous.[6]

Cook-Reska challenges the district court's conclusion that she failed to meet her "burden [of] maintaining billing time records in a manner that would enable the reviewing court to identify each distinct claim." *Von Clark*, 916 F.2d at 259. The time entries were in "block-billing" format, making allocation between the ED Claims and Non-ED Claims difficult.[7]

After the government informed Cook-Reska's lawyers of the nationwide

---

[5] For example, a 1.5-hour entry for August 1, 2011, stated, "Conference call with . . . DOJ trial lawyer [] about . . . including in the audit various types of inappropriate admissions, *rather than simply emergency room admissions*." (Emphasis added.)

[6] Cook-Reska relies on *Longhi* to claim that she should recover all fees because her ED and Non-ED Claims were successful. In *Longhi*, we held that a court did not abuse its discretion in awarding attorneys' fees for hours spent on both successful and unsuccessful claims. *Longhi*, 575 F.3d at 476. That holding, however, followed our conclusion that the court did not clearly err by finding that the successful and unsuccessful claims involved a common core of facts. *Id*. *Longhi* does not help Cook-Reska, because her claims involved different facts.

[7] "'Block-billing' is a time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534 n.15 (10th Cir. 1996)). "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation [ . . . because] the court cannot accurately determine the number of hours spent on any particular task . . . ." *Jane Roe/Rachel V. Rose v. BCE Tech. Corp.*, 2014 WL 1322979, at *6 (S.D. Tex. Mar. 28, 2014).

No. 15-20312

investigation on March 9, 2011, they were on notice—and in fact knew—that they were dealing with two sets of claims. Further, given their experience as FCA attorneys, they should have been aware of the FCA's first-to-file rule that might require further granularity in timekeeping. The lawyers failed to distinguish between the time they spent on the ED Claims and the Non-ED Claims.[8] At the very least, it was not an abuse of discretion to conclude that the block-billed time entries were insufficient to allow the court to allocate time between the ED and Non-ED Claims. In sum, the court did not abuse its discretion by awarding Cook-Reska nearly $730,000 in attorneys' fees for her Non-ED Claims and the hours in the "Both" category that preceded her involvement in the ED Claims.

IV.

Cook-Reska questions the decision to assign rates of $550 and $125 for her attorneys and investigator, respectively. We review a decision on reasonable rates for clear error only. *Miller v. Raytheon Co.*, 716 F.3d 138, 148 (5th Cir. 2013) (quoting *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 380 (5th Cir. 2011)).

The award must only be "reasonable" and "sufficient to attract competent counsel." *McClain*, 649 F.3d at 381. To that end, the court should base its award on the "prevailing market rates in the relevant community." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). We have consistently

---

[8] For example, an eleven-hour entry from October 3, 2011, stated, "Review email from Michele Lee; phone conference with co-counsel regarding same; telephone conference with Michele Lee and other lawyers regarding possible transfer of all cases to Nashville; further conferences with co-counsel re: response to DOJ; telephone conference with Andrew Bobb re: same; review of emails re: use of MDL; preparation of draft email to SEIU attorneys;[] conference call with client and consultants." None of these entries was attributed to ED or Non-ED Claims, and none of the hours were attributed to any of the individual tasks. Far from providing a sufficient basis, these entries revealed almost no basis from which the district court could apportion hours between the ED and Non-ED Claims.

interpreted "prevailing community" to mean the local geographic community. *Id.* at 381–82 (collecting cases). Further, the court need not accept the requested rate—even where it is reasonable and within prevailing market rates—if the court explains why it used a different rate.[9] In *Miller*, 716 F.3d at 148, the district court reduced the requested hourly rates by 30%, relying on "state bar surveys, attorneys['] fees in similar cases, and the skills of [the] attorneys . . . ." We found no error because the resulting rates were "reasonable, customary rates." *Id.*

Here, the district court reduced the rates after reviewing similar cases from the Houston area, a *Texas Lawyer* survey of median rates charged in the Houston and Texas legal markets, and the court's knowledge of the customary rates in the Houston area. Cases provided to the court suggested a maximum of $600 for attorneys and a range of $85 to $110 for support staff such as investigators. According to the *Texas Lawyer* survey, equity partners in Houston billed a median rate between $375 and $475, and senior legal support staff received a median of $119.

The court carefully explained why it rejected Cook-Reska's requested rates and chose its own. The rates were within prevailing market rates in the relevant community, reasonable, and "sufficient to attract competent counsel." *McClain*, 649 F.3d at 381. The court did not abuse its discretion.

AFFIRMED.

---

[9] *Islamic Ctr. of Miss., Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 468–69 (5th Cir. 1989), *overruled on other grounds by Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993); *see also Miller*, 716 F.3d at 148.