# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50332

Con. w/ 13-50666

STRUCTURAL METALS, INCORPORATED,

>    Plaintiff - Appellee

v.

S&C ELECTRIC COMPANY,

>    Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2014

Lyle W. Cayce
Clerk

---

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-984

---

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Appellant S&C Electric Company appeals the district court's denial of its motion for remittitur as well as the district court's award of attorney's fees to Appellee Structural Metals, Inc. For the following reasons, we AFFIRM the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50332 c/w No. 13-50666

## I.      Factual and Procedural Background

Plaintiff-Appellee Structural Metals, Inc. operates a steel recycling plant in Seguin, Texas.  Steel recycling is, as one might imagine, a process that demands a significant amount of power.  Yet the amount of power required is not constant.  Smaller pieces of scrap require less power, while larger pieces require more.  That fluctuation in the demand for power can cause dips in the overall flow of electricity throughout the plant.  When Structural Metals acquired a new caster,[1] which was unable to tolerate variances in voltage of more than 5 per cent, it began looking for a solution that would make the flow of electricity throughout the plant more reliable.

To that end, Structural Metals began negotiating with Defendant-Appellant S&C Electric Company.  Between 2003 and 2005, Structural Metals and S&C Electric negotiated various proposals for the purchase of Adaptive VAR Compensators ("AVC"), which were meant to ensure that the amount of power flowing throughout the steel recycling plant remained consistent.  Some of the proposals involved the purchase of the AVCs and all of the additional facilities, products, and installation required to make them work.  Other proposals were simply for the purchase of the AVCs themselves.  Structural Metals ended up accepting the proposal for the AVC units only, electing to purchase the additional products elsewhere and to have another company install the AVCs and build the necessary facility.  The purchase price for the AVCs was $306,500.

Nevertheless, Structural Metals has maintained throughout this action that its contract was for an "AVC System," by which it presumably meant that S&C Electric had sold it an overall design to regulate its power flow, not just the AVC units that were the centerpiece of that design.  Structural Metals's

---

[1] A caster transforms the molten steel into solid steel bars for storage and transport.

2

argument was that even though Structural Metals did not purchase all of the components of that design from S&C Electric, S&C Electric was responsible for making sure the overall design worked. S&C Electric hotly contested that interpretation of the contract, alleging that it only promised to sell the two individual AVC units, and that Structural Metals was responsible for implementing them after rejecting an offer to have S&C Electric build and install the entire system.

In January of 2006, S&C Electric commissioned the two AVC units. From that point forward, Structural Metals began experiencing problems. Structural Metals contends that the AVC units never regulated the power level in the plant to the degree that S&C Electric had warranted. It also claims that the AVC units constantly overheated, causing damage to the capacitors and other components of the AVC system. S&C Electric responded to these concerns by promising to stand by its equipment. In November, 2006, it extended the warranty and promised to bring its equipment "to an acceptable condition."

Before it could follow through, however, a fire broke out in the AVC system on December 2, 2006 and caused extensive damage. Structural Metals blamed S&C Electric's AVC units for causing the fire, and demanded its money back.

When S&C Electric refused, Structural Metals sued for breach of contract and breach of warranty under Texas law. Under both theories of recovery, Structural Metals sought not just the value of the AVC units, but the value of the entire "AVC System," including components purchased from other companies.

After the litigation began, the cause of the fire continued to be a major issue. Structural Metals contended that the AVC units caused the fire, whereas S&C Electric claimed that the electrical cables running from one of

the AVC units to one of the transformers—which had not been installed by S&C Electric—were the cause. S&C Electric claimed that the cables used were rated for too low a current and were overtaxed by the AVC system, causing them to overheat and arc, causing the fire.

The electric cables ran through an underground culvert from the building housing the AVC units to the transformers. After the fire, Structural Metals retrieved the electric cables from the burned out, melted culvert and stored them in a locked building on the plant's premises. Yet, before S&C Electric was able to investigate the cables in connection with this litigation, the cables disappeared.[2] As a spoliation remedy, the district court approved Structural Metals's proposal that it not be allowed to contest that the fire started in the cables at trial.

After the fire, Structural Metals filed a claim with its insurance company, Liberty Mutual. Liberty Mutual investigated the fire damage and prepared a list of items that needed to be repaired or replaced and proposed a settlement of the insurance claim. After some negotiation, Liberty Mutual agreed to settle the claim for $475,650, which, after Structural Metals's $200,000 deductible, resulted in a net insurance payment of $275,650.

The case went to trial in November 2009, with Structural Metals asserting a breach of contract claim that also included theories of breach of an express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. On the breach of warranty claims, the jury was instructed that the measure of damages is "[t]he difference, if any, at the time and place of acceptance,

---

[2] Structural Metals had suffered a series of copper thefts from its plant. The lock on the building in which the cables were being stored was found damaged around the time that Structural Metals discovered the cables were missing. The cables contained copper.

4

between the value of the AVC system accepted and the value that the AVC system would have had if it had been as warranted."

The jury found S&C Electric liable for breach of an express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose.[3] The jury awarded Structural Metals $306,500 in damages.

After the verdict, S&C Electric moved the court to remit the damages award under Federal Rule of Civil Procedure 59(e).[4] S&C Electric argued that its damages should be remitted by the amount of the insurance payment that Structural Metals received from Liberty Mutual. The district court denied that motion, ruling that, under Texas law, the collateral source rule bars consideration of insurance payments in contract actions as well as in tort actions and, alternatively, that S&C Electric failed to show that the insurance payment compensated Structural Metals for the same loss as the damages award.

Structural Metals then moved for attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. The district court awarded Structural Metals attorney's fees in the amount of $727,487.32 and costs in the amount of $11,910.77.

S&C Electric then timely appealed. On appeal, S&C Electric argues that the district court erred in denying its motion for remittitur and in its award of attorney's fees.

---

[3] The jury found S&C Electric not liable on the run-of-the-mill breach of contract claim, because they found Structural Metals had not revoked acceptance of the AVCs.

[4] S&C Electric also moved for judgment as a matter of law, but the district court's denial of that motion was not appealed.

## II.    The Motion for Remittitur

S&C Electric argues on appeal that the district court erred in refusing to remit Structural Metals's damages award in the amount of the insurance payment from Liberty Mutual to Structural Metals after the fire.  We review the district court's decision to deny S&C Electric's motion for remittitur for abuse of discretion.  *See Consol. Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 435 (5th Cir. 2010) ("The decision to grant or deny a motion for new trial or remittitur rests in the sound discretion of the trial judge; that exercise of discretion can be set aside only upon a clear showing of abuse." (internal quotation marks omitted)).  Remittitur can be ordered in two ways.  In the first, the plaintiff is offered a choice—accept the remittitur or a new trial will be ordered.  *See* Wright & Miller, 11 Fed. Prac. & Proc. § 2815 (3d ed. 2012); *Consol. Cos.*, 616 F.3d at 435.  In the second, remittitur is ordered without offering the plaintiffs a new trial.  This method is only permissible, without running afoul of the Seventh Amendment, where "'it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there.'"  *Consol. Cos.*, 616 F.3d at 435 (quoting *Foradori v. Harris*, 523 F.3d 477, 503 (5th Cir. 2008)).  S&C Electric here argues only that the second, unconditional type of remittitur was appropriate, indicated by its repeated invocations of the standard for that relief.

As such, in order to prevail, S&C Electric must show that "as a matter of law . . . certain identifiable sums included in the verdict should not have been there." *Id.* (internal quotation marks omitted).  S&C Electric avers that the damages award should have been reduced by the full amount of the insurance payment.   S&C Electric contends that, under Texas law, the collateral source rule permitting recoveries from two sources for the same injury is limited to tort cases, not contract cases like this one.

We do not reach the issue of whether the collateral source rule applies to contract cases because the one satisfaction rule—and, it follows, its collateral source exception—is inapplicable here. "The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). The collateral source rule operates as an exception to the one satisfaction rule, permitting multiple recoveries for the same injury in certain situations where the outside source of recovery is independent of the wrongdoer. *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980) ("If payment is within the collateral source rule, the principle forbidding more than one recovery for the same loss is not applicable."); *id.* at 934. The collateral source rule traditionally operates in tort law, preventing insurance payments from an injured party's policy from being credited against a tortfeasor's liability. *See id.* (Tex. 1980) ("The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy."); *see also* Restatement (Second) of Contracts § 347 cmt.e. The Second Restatement of Torts sets out the rule as follows: "Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part *of the harm for which the tortfeasor is liable*." Restatement (Second) of Torts § 920A (emphasis added); *see also Haygood v. De Escabedo*, 356 S.W.3d 390, 394 n.25 (Tex. 2012) (citing the Second Restatement's definition).

The one satisfaction rule applies only where the plaintiff receives more than one recovery *for the same injury*. S&C Electric argues that the insurance payment compensated Structural Metals for the "exact same claimed loss," namely the purchase price of the AVC units. Yet the insurance payment compensated S&C Electric for a *different* injury than did the jury damage

award. The jury found S&C Electric liable for breach of warranty. Damages for breach of warranty in a sale of goods are measured by "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Tex. Bus. & Com. Code § 2.714; *see also* U.C.C. 2-714. The jury instructions clearly and correctly set out this standard for damages in a breach of warranty claim. As we presume that juries follow their instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), we must presume that the $306,500 represents that amount—the difference in the value of the AVC units as delivered and the value of the AVC units if they had been as warranted. Further, the district court found that there was sufficient evidence for the jury to "conclude that the value of the AVC units at the time of acceptance was zero," *Structural Metals, Inc. v. S&C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 870084, at *4 (W.D. Tex. Mar. 7, 2013), and S&C Electric does not challenge that sufficiency finding on appeal.

In contrast, the insurance payment from Liberty Mutual here compensated Structural Metals for losses suffered in the fire. The insurance payment did not compensate Structural Metals for the "harm for which the tortfeasor is liable," or, translated into terms more appropriate for contract law, the damages caused by S&C Electric's breach of warranty, which existed at the time of delivery and were not affected by the fire. Since there were two separate injuries, the one satisfaction rule does not apply, and there is no need to consider whether the collateral source rule allows multiple recoveries in this case. *See* Stewart, 822 S.W.2d at 7 ("The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery *for the same injury*." (emphasis added)).

S&C Electric's real complaint seems to be that it is inconsistent for the jury to have valued the AVC units at the time of acceptance at zero, while a non-zero portion of the insurance payment was earmarked for those same AVC

units.  As persuasive as that argument may be, we cannot say *as a matter of law* that the amount paid for goods a year after delivery necessarily represents their value *at the time of acceptance*, the crucial point for breach of warranty damages.  Tex. Bus. & Com. Code § 2.714; *accord* U.C.C. § 2-714.[5]  At best, the insurance payment is evidence—strong evidence—that the goods as delivered had a value greater than zero.  But while the two recoveries appear to value the AVC units inconsistently, that is not for us to decide.  The jury was properly instructed and, while the fact of and value of the insurance payment might have caused the jury to rethink its valuation of the AVC units as received, that information was excluded from evidence.  S&C Electric has appealed only the denial of its motion for remittitur, not the exclusion of the insurance payments from evidence.  As such, no matter the merit that an argument for admissibility in evidence would have had, the issue is not before us.  Therefore, the district court did not err in denying the motion for remittitur.

## III.   The Attorney's Fees

S&C Electric challenges the district court's award of attorney's fees on three grounds.  First, it argues that Structural Metals did not satisfy the presentment requirement, a predicate to the award of attorney's fees under Texas law.  Second, it argues that the district court erred in failing to require Structural Metals to segregate fees incurred pursuing its unsuccessful claims

---

[5] For example, if Seller sold Buyer a car that was worth $40,000 as warranted but only $10,000 as delivered, the fact that Buyer resold the car a year later for $20,000 would have no bearing on the amount of damages he could recover under the U.C.C.  If the AVC units, for example, were worth $100,000 at the time of delivery, but Structural Metals's compensation from the insurance company was only $50,000 a year later, presumably S&C Electric would be arguing that the proper measure of its damages would be $206,500 only.  The fact that the amount increased in the first example and decreased in the second does not alter the equation, except as to its *plausibility*.  That is to say, we generally expect goods to decrease in value over time.  Yet while that would be relevant to the credibility of any argument by Structural Metals that the goods had no value as delivered and yet increased in value at the time of the insurance payment, it does not allow us to say that, *as a matter of law*, the damages award must be remitted.

from those incurred pursuing its successful claims. Third, it argues that the district court erred in awarding an amount of attorney's fees that was disproportionate to the damages award that Structural Metals obtained.

The award of attorney's fees in a diversity case is governed by state law. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "Texas follows the American Rule, which provides that there can be no recovery of attorney's fees unless authorized by contract or statute." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013). Despite that general rule, Texas law specifically provides for the recovery of attorney's fees in breach of contract cases. Tex. Civ. Prac. & Rem. Code § 38.001(8). Attorney's fees for a successful claim for breach of an express warranty are recoverable under section 38.001, *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 63 (Tex. 2008), and, as the parties have not disputed the matter, we assume without deciding that fees for implied warranty claims are also recoverable.

We review the district court's award of attorney's fees under section 38.001 for abuse of discretion, though we review its factual determinations only for clear error. *Mathis*, 302 F.3d at 461–62.

### A. Presentment

To recover fees under section 38.001, the plaintiff must have "present[ed] the claim to the opposing party." Tex. Civ. Prac. & Rem. Code § 38.002. Both oral and written demands are sufficient to satisfy the presentment requirement. *Gordon v. Leasman*, 365 S.W.3d 109, 116 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Panizo v. Young Men's Christian Ass'n*, 938 S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981).

The district court held that two distinct acts satisfied the presentment requirement. First, in January 2008, after the fire, Henry Camarillo, a Structural Metals employee, informed S&C Electric's authorized sales agent,

No. 13-50332 c/w No. 13-50666

Fred Oberlender & Associates, that Structural Metals wanted its money back. Second, Structural Metals sent a written offer to settle for $772,071.27 in March 2010.

On appeal, S&C Electric argues that the 2010 settlement offer was excessive and therefore did not satisfy the presentment requirement. *See Panizo*, 938 S.W.2d at 169. Yet S&C Electric has failed to argue on appeal that the district court erred in holding that Structural Metals's 2008 demand for its money back was insufficient to meet the presentment requirement. As such, the argument is waived, *see United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010), and we affirm, *Bickford v. Int'l Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir. 1981) ("[R]eversal is inappropriate if the ruling of the district court can be affirmed on any grounds, regardless of whether those grounds were used by the district court."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

### B.    Segregation of Fees

As noted above, the statute providing for attorney's fees in breach of contract claims is an exception to Texas's general adherence to the American Rule. *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d at 172. As such, "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).

Here, S&C Electric claims that the district court erred in failing to require Structural Metals to segregate certain attorney's fees that were unrecoverable.

First, S&C Electric claims that Structural Metals should have had to segregate fees relating to Structural Metals's claim that S&C Electric warranted an entire AVC "system" rather than the individual AVC units. S&C Electric argues in its brief that "[a]s a result of [Structural Metals's] intransigent position on the system and services supposedly provided and

warranted by S&C [Electric], the parties spent years litigating the scope of a straightforward sales contract." However, that argument does not identify a separate *claim* apart from Structural Metals's breach of warranty claim for which fees were not recoverable. Rather it is an argument that the jury found that S&C Electric warranted less than Structural Metals originally contended. As such, the district court did not abuse its discretion in ruling that Structural Metals was entitled to "fees with regard to legal services that advanced its breach of warranty claim, even if it did not achieve full success on that claim, such that segregation in this regard is not required. S&C [Electric]'s arguments are more properly evaluated under the reasonableness factors, specifically, the degree of success obtained."

Second, S&C Electric argues that Structural Metals should not be able to recover fees relating to the cause of the December 2006 fire. According to S&C Electric, Structural Metals's continued insistence that the AVC units were the cause of the December 2006 fire in the face overwhelming evidence caused the parties to "unnecessarily litigate[] the cause of the fire for years." The district court rejected that argument. The court noted that S&C Electric argued at trial that Structural Metals's faulty installation of the cables caused the December 2006 fire and that the fire caused all of Structural Metals's claimed damages, not any faults with the AVC units. It followed then, the court continued, that "[h]ad the jury accepted S&C [Electric]'s argument that the fire caused all of [Structural Metals's] damages and that only [Structural Metals] was responsible for the fire, it would not have awarded any damages for breach of warranty." As such, the court ruled that Structural Metals "did not lose on the issue of the cause of the fire, and litigation of that issue was necessary for [Structural Metals] to recover damages on its warranty claims." The district court's finding that S&C Electric argued that the cause of the fire precluded Structural Metals from recovering damages is a finding of fact

underlying its attorney's fees award, and we review it only for clear error. *See Mathis*, 302 F.3d at 461–62. S&C Electric cites only one place in the record to dispute the district court's finding that S&C Electric put the issue of the fire in the foreground. The citation is to an exchange during direct examination in which Henry Camarillo, an engineer with Structural Metals who headed up the AVC project, gives his personal opinion that the fire began in the AVC units. But that sole exchange is insufficient for us to conclude that the district court's finding was clearly erroneous. Since that finding stands, we hold that the district court did not abuse its discretion in ruling that Structural Metals did not have to segregate fees relating to the cause of the December 2006 fire.

Alternatively, we have difficulty seeing how any argument about the cause of the fire is a separate "claim." Any argument that the AVC units caused the fire would seem to be an argument for consequential damages for the warranty or contract claims under U.C.C. 2-715 and not a separate claim. As such, there was no need to segregate fees regarding the cause of the fire. *See Tony Gullo*, 212 S.W.3d at 311 ("[F]ee claimants have always been required to segregate fees between *claims* for which they are recoverable and *claims* for which they are not." (emphasis added)); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under Section 38.001(8), a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages.").

Third, S&C Electric asserts that the district court erred in failing to require Structural Metals to segregate attorney's fees related to the spoliation issue and Structural Metals's argument that it revoked acceptance of the AVC units. Yet Structural Metals has segregated fees that it found pertained only to the spoliation and revocation issues. Additionally, Structural Metals reduced its overall fee request by 2% in order to account for fees related to revocation of acceptance that may still have been included. S&C Electric cites

nothing to support its argument that additional fees should be segregated other than to point us to a spreadsheet prepared by counsel for S&C Electric that purports to show additional amounts of time that Structural Metals spent on these issues that were not segregated. But S&C Electric fails to explain how those time entries identified related to the spoliation issue. Without more than S&C Electric's bare characterization of the entries, we cannot say that the district court abused its discretion in declining to require segregation of those entries. As to the revocation issue, the district court concluded that two of the time entries related to contract formation and therefore did not need to be segregated as they were related to both the breach of warranty and breach of contract claims. Our review of the entries yields the same conclusion, especially as S&C Electric cites no additional evidence to the contrary. As to the remaining entries cited by S&C Electric, the district court apparently agreed that a portion of the time entries cited in the spreadsheet related to revocation but concluded that Structural Metals's 2% overall reduction in its fee request was sufficient to account for those entries. S&C Electric presents no arguments as to why the 2% reduction is insufficient. As such, there is no basis for us to conclude that the district court abused its discretion in rejecting S&C Electric's argument that additional amounts must be segregated.

Fourth, S&C Electric argues that Structural Metals should have been forced to segregate fees relating to removal to federal court. S&C Electric claims that Structural Metals fraudulently joined its parent company, CMC (like S&C Electric, a Delaware corporation), as a plaintiff and S&C Electric's Texas sales agent, Fred Oberlender & Associates (a Texas corporation), as a defendant in order to prevent removal based on diversity of citizenship. Yet the district court found that "[t]here is no indication that [Structural Metals] joined its parent company or Fred Oberlender in bad faith or to preclude removal. After removal, [Structural Metals] did not file a motion to remand,

but instead investigated its options and voluntarily amended its complaint to remove the non-diverse parties." To rebut that finding, S&C Electric argues only "[t]hat statement is wrong. The fact that [Structural Metals] immediately amended its complaint to remove those parties shows that [Structural Metals] knew that it had no reasonable basis for including them in the first place. The only reason they could have been included was to avoid removal." Yet those bare assertions are insufficient to demonstrate that the district court's finding was clearly erroneous. S&C Electric further argues that "amending the complaint to remove improperly included parties did not advance the AVC Warranty Claim, even if [Structural Metals] did not have a bad faith motive for including them in the first place." This contention is meritless. Had Structural Metals contested the motion to remand and lost, it still would not have been precluded from recovering attorney's fees associated with removal. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003) ("[A] party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim."). To say then that Structural Metals cannot recover its fees because, instead of engaging in a lengthy—and expensive—battle over subject matter jurisdiction for which it could have recovered fees, it amended its pleadings to dismiss non-diverse parties would truly be a case of no good deed going unpunished. The district court did not abuse its discretion in holding that fees relating to removal were recoverable.

## C. *Proportionality*

Lastly, S&C Electric argues that the attorney's fees should be reduced because they are significantly disproportionate to Structural Metals's recovery in this case. The district court applied the lodestar method in evaluating the

15

attorney's fees, and the parties have not disputed the use of that method.[6] First, the court determines the "reasonable hours spent by counsel in the case and a reasonable hourly rate for such work." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Second, the court multiplies the number of hours by the applicable rate, yielding the lodestar. *Id.* The court then adjusts the lodestar up or down based on reasonableness factors laid out in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). *Id.*

Here, the district court applied the lodestar method and *Arthur Andersen* factors in making its attorney's fees calculation. S&C Electric's only true contention on appeal is that an award of $727,487.32 in attorney's fees in unreasonable in light of a $306,500 recovery. But "[u]nder Texas law, disproportion alone will not render an attorney fee award excessive." *Quanta Servs. Inc. v. Am. Admin. Grp. Inc.*, 384 F. App'x 291, 298 (5th Cir. 2008); *see also Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) ("[T]he amount awarded for attorney's fees can greatly exceed the amount of damages recovered."). The district court explicitly considered the *Arthur Andersen* factor relating to "the results obtained" and declined to adjust the lodestar downward further.

---

[6] It is unclear whether the lodestar method is the correct method for calculating attorney's fees under section 38.001. *Compare Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.,* 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, no pet.) ("One method of computing a reasonable fee is the lodestar method, or the product of reasonable hours times a reasonable rate." (internal quotation marks omitted)), *with Concert Health Plan v. Hous. Nw. Ptrs., Ltd.*, No. 14-12-00457-CV, 2013 WL 2382960, at *9 n.17 (Tex. App.—Houston [14th Dist.] May 30, 2013, no pet.) ("Because the lodestar method is not the method used for calculating the appropriate attorney's fees in a breach-of-contract case, this case is not instructive to our analysis."). Some Texas cases indicate that use of the lodestar method is permissible but not mandatory under section 38.001. *See Toshiba Mach. Co.*, 180 S.W.3d at 782; *City of Dallas v. Arnett*, 762 S.W.2d 942, 958 (Tex. App.—Dallas 1988, writ denied) ("The jury was not required to accept the expert's testimony or to calculate its award on the basis of the lodestar method."); *Long v. Griffin*, --- S.W.3d ---, ---, No. 11-1021, 2014 WL 1643271, at *3 (Tex. 2014) (reversing an award of attorney's fees where the supporting affidavit, which used the lodestar method, provided only generalities).

No. 13-50332 c/w No. 13-50666

Without more than an argument that the fee was disproportionate, we cannot say that the district court abused its discretion.

## IV.    Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.